UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

G.L. WILLIAMS ASSOCIATES, INC.; RT )
TECHNOLOGY, LLC; and WEST COAST )
REPS, INC. )
                                     )    C.A. No. 06-114-SLR
                Plaintiffs, )
                                    )
    vs. )
                                    )
MOTOROLA, INC., )
                                    )
                Defendant. )
                                    )

**BRIEF OF DEFENDANT MOTOROLA, INC. IN SUPPORT OF ITS
MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR
MORE DEFINITE STATEMENT**

William W. Bowser
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Of Counsel:

Randy Papetti
Cory A. Talbot
Emily S. Cates
LEWIS AND ROCA LLP
40 N. Central Avenue
Phoenix, Arizona 85004
(602) 262-5311

Attorneys for Defendant

Dated: April 10, 2006.

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING ................................................. 1

SUMMARY OF ARGUMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................. 2

I.     The Parties ........................................................................................... 2

II.    The Contracts ....................................................................................... 2

       A.     *The WCR Agreement* ................................................................. 2

       B.     *The RT Technologies/DSPCon Agreement* ............................. 3

       C.     *The GLW Agreement* ................................................................. 4

III.   Termination of the Contracts ............................................................... 4

       A.     *The WCR Agreement expired by its own terms* ....................... 4

       B.     *GLW failed to meet its performance requirements* ................. 4

       C.     *RT Technologies/DSPCon failed to meet its performance
              requirements and breached its agreement with Motorola* ...... 4

IV.    Pertinent Terms of the Contracts ........................................................ 5

              (1)    Sole Remedy ..................................................................... 5

              (2)    Limitation of Liability ...................................................... 5

              (3)    Termination ...................................................................... 5

              (4)    Integrated Agreement ....................................................... 6

              (5)    No Oral Modification ....................................................... 6

              (6)    Choice of Law .................................................................. 6

              (7)    Assignment ....................................................................... 6

ARGUMENT ................................................................................................... 7

1721688.3

I.      Arizona Law Governs ................................................................. 8

II.     Plaintiffs Cannot Maintain a Deceptive Trade Practices Claim .................. 8

III.    Plaintiffs' Negligent Misrepresentation Claim Fails ................................. 10

        A.      *There is No Alleged Misrepresentation of Fact* ............................. 10

        B.      *The Economic Loss Doctrine Bars Plaintiffs' Claim* ..................... 12

IV.     Plaintiffs Cannot Recover Punitive Damages ........................................... 13

V.      Plaintiffs' Deceptive Trade Practices, Fraud, and Negligent
        Misrepresentation Claims Fail to Comply With Rule 9(b) ....................... 14

VI.     GLW's Breach of Contract Claim Based on Motorola's "Moratorium" Fails
        ............................................................................................................... 17

CONCLUSION ................................................................................................. 17

1721688.3

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Apollo Group, Inc. v. Avnet, Inc.*,
   58 F.3d 477 (9th Cir. 1995) ........................................................................ 12

*Arnold & Associates, Inc. v. Misys Healthcare Systems*,
   275 F.Supp.2d 1013 (D. Ariz. 2003) ............................................................ 11

*Bank of Shaw v. Posey*,
   573 So. 2d 1355 (Miss. 1990) ...................................................................... 11

*Fare Deals Ltd. v. World Choice Travel.Com, Inc.*,
   180 F. Supp. 2d 678 (D. Md. 2001) ............................................................. 10

*FDIC v. Bathgate*,
   27 F.3d 850 (3d Cir. 1994) ........................................................................... 15

*In re Greater Southeast Community Hopital Corp.*,
   333 B.R. 506 (Bankr. D.C. 2005) .................................................................. 3

*In re NAHC, Inc. Securities Litigation*,
   306 F.3d 1314 (3d Cir. 2002) ........................................................................ 3

*In re Student Finance Corp.*,
   No. Civ.A. 03-507 JJF, 2004 WL 609329 (D. Del. 2004) ........................... 15

*In re Trans Union Corp. Privacy Litigation*,
   211 F.R.D. 328 (N.D.Ill. 2002) ...................................................................... 9

*J&R Ice Cream Corp. v. California Smoothie Licensing Corp.*,
   31 F.3d 1259 (3d Cir. 1994) ......................................................................... 10

*J-Squared Technologies, Inc. v. Motorola, Inc.*,
   364 F. Supp. 2d 449 (D.Del. 2005) .......................................................passim

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) ..................................... 8

*Lum v. Bank of America*,
   361 F.3d 217 (3d Cir. 2004) .......................................................................... 15

iii

1721688.3

*Murray v. Xerox Corp.*,
  811 F.2d 118 (2d Cir. 1987)...................................................................................... 12

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
  742 F.2d 786 (3d Cir. 1984)...................................................................................... 15

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*,
  971 F.2d 401 (9th Cir. 1992)....................................................................................... 9

*Toner v. Allstate Ins. Co.*,
  821 F. Supp. 276 (D.Del. 1993) ................................................................................ 16

*Von Grabe v. Sprint PCS*,
  312 F. Supp. 2d 1285 (S.D. Cal. 2003) ..................................................................... 10

## STATE CASES

*Carstens v. City of Phoenix*,
  75 P.3d 1081 (Ariz. App. 2003)........................................................................... 12, 13

*Dixon v. City of Phoenix*,
  845 P.2d 1107 (Ariz. App. 1992) .............................................................................. 14

*McAlister v. Citibank*,
  829 P.2d 1253 (Ariz. App. 1992) ......................................................................... 11, 12

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
  2 Cal.Rptr.2d 861 (Cal. App. 1991) .......................................................................... 11

*Travelers Indem. Co. v. Lake*,
  594 A.2d 38 (Del. 1991) ............................................................................................. 8

## FEDERAL RULES OF CIVIL PROCEDURE

12(b)(6) ................................................................................................................. 1, 3, 7

12(e)....................................................................................................................1, 9, 10

9(b) ......................................................................................................................passim

## STATE STATUTES

A.R.S. § 44-1522(A) .................................................................................................. 9

1721688.3

# MISCELLANEOUS

5A Charles A. Wright & Arthur R. Miller,
    *Federal Practice & Procedure* § 1296 (3d ed. 2004) ................................................. 16

Edward P. Ballinger, Jr. & Samuel T. Thumma,
    *The History, Evolution & Implications of Arizona's*
    *Economic Loss Rule*, 34 Ariz. St. L.J. 491 (2002) ....................................................... 13

Restatement (Second) of Conflict of Laws § 188 .............................................................. 8

William A. Lovett, *State Deceptive Trade Practice Legislation*,
    46 Tul. L.Rev. 724 (1972) .......................................................................................... 9

1721688.3

## NATURE AND STAGE OF THE PROCEEDING

On February 22, 2006, plaintiffs G.L. Williams Associates, Inc. ("GLW"), RT Technology, LLC ("RTT"), and West Coast Reps, Inc. ("WCR") sued Motorola, Inc., in this Court, asserting claims of (1) breach of contract, (2) promissory estoppel, (3) negligent misrepresentation, (4) breach of duty of good faith and fair dealing, (5) fraud, and (6) deceptive trade practices.

Motorola now moves to dismiss several of plaintiffs' claims pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure; Motorola also moves, in the alternative, for a more definite statement of plaintiffs' deceptive trade practices claim pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. This is Motorola's brief in support of its motion.

## SUMMARY OF ARGUMENT

Plaintiffs' deceptive trade practices, negligent misrepresentation, fraud, and punitive damages claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). GLW's breach of contract claim regarding Motorola's alleged failure to disclose a purported "moratorium" on the execution of manufacturer representative agreements should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs lack standing to assert a deceptive trade practices claim under governing Arizona law because they were neither consumers of Motorola's products nor the target of Motorola's product advertising. Plaintiffs cannot assert a negligent misrepresentation claim under Arizona law because they have not alleged a misrepresentation of fact, as opposed to a promise of future conduct, and it is barred by Arizona's economic loss doctrine. Plaintiffs cannot recover punitive damages under Arizona law because the parties' written agreements expressly preclude such relief. And, even had plaintiffs stated claims for deceptive trade practices and negligent misrepresentation, plaintiffs failed to plead those claims—and their fraud claim—with the particularity required by Rule 9(b).

Additionally, GLW cannot state a breach of contract claim against Motorola for failing to disclose a purported "moratorium" on the execution of manufacturer representative agreements because GLW had no contractual relationship with Motorola when this so-called "moratorium" was enacted.

## STATEMENT OF FACTS

### I.    The Parties.

Motorola Computer Group ("MCG")[1] is a business unit of defendant Motorola, Inc. (*See* Compl. ¶ 9.)  MCG manufactures computer boards and other products for use in embedded computing applications.

Plaintiffs are technology sales organizations known as manufacturer's representatives.  (Compl. ¶ 10.)  They are located across the United States:  RTT is based in Maryland (Compl. ¶ 3); WCR is based in California (Compl. ¶ 4); and GLW is based in New Jersey (Compl. ¶ 2).

### II.   The Contracts.

#### A.    *The WCR Agreement*.

Effective March 18, 2003, WCR entered into a written Manufacturer's Representative Agreement with MCG, pursuant to which WCR agreed to act as a non-exclusive sales representative for MCG in Southern California.  (Compl. Ex. A, Ex. 2 thereto.)  The Agreement provided that the contract would expire after one year and could be terminated even earlier with or without cause pursuant to the Agreement's termination provisions.  (Compl. Ex. A ¶¶ 7.1-7.2.)  WCR and MCG further agreed that, after the one year term, the contract could be renewed only pursuant to a new written agreement signed by both parties:

---

[1] MCG is now known as Motorola's Embedded Communications Computing Group. However, we will refer to it as MCG throughout this Brief to avoid confusion.

2

> [T]his Agreement will continue in full force and effect for an initial term expiring one (1) year after the effective date hereof and thereafter may be renewed only upon the written Agreement of both parties.

(*Id.* ¶ 7.1).

### B.     *The RT Technologies/DSPCon Agreement.*

Motorola has no contractual relationship with plaintiff RTT; rather, Motorola entered into an agreement with "RT Technologies, a Division of DSPCon, Inc.," effective May 15, 2003, pursuant to which RT Technologies/DSPCon agreed to act as a non-exclusive sales representative for MCG in the states of Maryland and Virginia and in the District of Columbia.[2] (Compl. Ex. C, Ex. 2 thereto.)  The terms of that Agreement are nearly identical to those of the WCR Agreement, including:  The agreement was to expire after one year; the agreement could be terminated earlier with or without cause pursuant to specific termination provisions; and the agreement could be renewed only pursuant to a new written agreement signed by both parties.  (Compl. Ex. C ¶¶ 7.1 & 7.2.)

The Agreement also included a "Nonassignment" provision stating, "Representative will not sell, assign, delegate, or otherwise transfer any of its rights or obligations hereunder without the prior written consent of Motorola."  (Compl. Ex. C ¶ 9.5.)

---

[2] RTT was not formed until the end of October 2003, nearly six months after Motorola contracted with RT Technologies/DSPCon.  (*See* RTT Articles of Organization, attached as Ex. A (dated 10/31/03).)  The Court can take judicial notice of RTT's Articles of Organization in the context of a motion to dismiss under Rule 12(b)(6).  *See, e.g.*, *In re Greater Southeast Community Hopital Corp.*, 333 B.R. 506, 527 n.25 (Bankr. D.C. 2005) (stating that "the court can take judicial notice of [a company's] articles of incorporation in the context of a motion to dismiss under Rule 12(b)(6)"); *see also In re NAHC, Inc. Securities Litigation*, 306 F.3d 1314, 1331 (3d Cir. 2002) (taking judicial notice of documents filed with the SEC but not relied upon in the complaint).

1721688.3

### C.    *The GLW Agreement*.

Effective June 3, 2003, GLW also entered into a written Manufacturer's Representative Agreement with MCG, pursuant to which GLW agreed to act as a non-exclusive sales representative for MCG in Delaware, New Jersey, Pennsylvania, and portions of New York.  (Compl. Ex. E, Ex. 2 thereto.)  The Agreement was virtually identical to the WCR and RT Technologies/DSPCon Agreements, and provided that it would expire after one year, could be terminated even earlier with or without cause pursuant to the Agreement's termination provisions, and could be renewed only pursuant to a new written agreement signed by both parties.  (Compl. Ex. E ¶¶ 7.1 & 7.2.)

### III.    **Termination of the Contracts.**

### A.    *The WCR Agreement expired by its own terms*.

The WCR Agreement expired by its terms on March 17, 2004 when it was not renewed in writing as mandated by the Agreement.  (*See* Compl. Ex. A ¶ 7.1.)  Motorola confirmed the expiration of the Agreement in a letter dated February 26, 2004.  (*See* Compl. Ex. B.)

### B.    *GLW failed to meet its performance requirements*.

The GLW Agreement is another story.  Motorola did not believe GLW was maintaining the minimum performance standards required by the Agreement and therefore notified GLW on February 26, 2004, of MCG's intent to terminate the agreement in 30 days if GLW's deficiencies were not rectified.  (*See* Compl. Ex. F.)  In that same letter, MCG notified GLW that, in any event, MCG declined to continue the contractual relationship beyond its one-year term that expired on June 30, 2004.  (*Id.*).

### C.    *RT Technologies/DSPCon failed to meet its performance requirements and breached its agreement with Motorola*.

As with GLW, Motorola did not believe RT Technologies/DSPCon was maintaining the minimum performance standards required by the Agreement and therefore

1721688.3

notified RT Technologies/DSPCon on February 26, 2004, of MCG's intent to terminate the agreement in 30 days if RT Technologies/DSPCon's deficiencies were not rectified. (*See* Compl. Ex. D.)  Further, Motorola believed that RT Technologies/DSPCon had improperly attempted to transfer the contract without Motorola's written approval, a violation of the Agreement.  (*See* Compl. Ex. D.)  In that same letter, MCG notified RT Technologies/DSPCon that, in any event, MCG declined to continue the contractual relationship beyond its one-year term that expired on May 14, 2004.  (*Id.*).

## IV.    Pertinent Terms of the Contracts.

In addition to their one-year terms, the Agreements contain other conditions that bar plaintiffs' claims, including:

(1)    <u>Sole Remedy</u>:  The Agreements provide that "Motorola's payment obligations [in Article VII of the Agreements] shall be Representative's sole remedy for the termination or nonrenewal of this Agreement . . . ."  (Compl. Ex. A ¶ 7.4; Ex. C ¶ 7.4; Ex. E ¶ 7.4.)

(2)    <u>Limitation of Liability</u>:  The Agreements provide that regardless of the claims asserted by plaintiffs, Motorola shall not be liable for incidental, special, punitive, or consequential damages.  (Compl. Ex. A ¶ 3.8; Ex. C ¶ 3.8; Ex. E ¶ 3.8.)

(3)    <u>Termination</u>:  The Agreements contain extensive termination provisions, allowing either party to terminate each Agreement with and without cause.  With cause, either party was entitled to terminate the Agreement upon 30 days written notice if the defaulting party failed to take corrective action.  (*See* Compl. Ex. A ¶ 7.2(A); Ex. C ¶ 7.2(A); Ex. E ¶ 7.2(A).)  And without cause, either party was entitled to terminate the Agreement any time "after the initial 180 days following the effective date of this Agreement, on thirty (30) days prior written notice to the other party."  (Compl. Ex. A ¶ 7.2(G); Ex. C ¶ 7.2(G); Ex. E ¶ 7.2(G).)

1721688.3

(4)     <u>Integrated Agreement</u>:  The Agreements are fully integrated.  Each provides: "This Agreement represents the entire agreement between the parties and supersedes all prior discussions, agreements, and understandings of every kind."  (Compl. Ex. A ¶ 9.1; Ex. C ¶ 9.1; Ex. E ¶ 9.1.)

(5)     <u>No Oral Modification</u>:  In addition to the requirement that the Agreements "may be renewed only upon the written Agreement of both parties," (Compl. Ex. A ¶ 7.1; Ex. C ¶ 7.1; Ex. E. ¶ 7.1), the Agreements further provide:  "No modification of this Agreement will be effective unless in writing and signed by both parties.  Any and all side letters or supplementary agreements not specifically added to this agreement by amendment or addendum shall be of no effect whatsoever" (Compl. Ex. A ¶ 9.1; Ex. C ¶ 9.1; Ex. E ¶ 9.1).

(6)     <u>Choice of Law</u>:  Each Agreement provides that it "will be construed, enforced, and performed in accordance with the internal laws of Arizona, U.S.A. without reference to principles of conflicts of laws."  (Compl. Ex. A ¶ 9.7; Ex. C ¶ 9.7; Ex. E ¶ 9.7.)

(7)     <u>Assignment</u>:  The Agreements include a "Nonassignment" provision stating, "Representative will not sell, assign, delegate, or otherwise transfer any of its rights or obligations hereunder without the prior written consent of Motorola."  (Compl. Ex. A ¶ 9.5; Ex. C ¶ 9.5; Ex. E ¶ 9.5.)  The Agreements further provide that Motorola may immediately terminate the Agreement "if Representative should attempt to sell, assign, delegate, or transfer any of its rights and obligations under this Agreement without having obtained Motorola's prior written consent thereto, or if there should occur any material change in the management, ownership, [or] control . . . of Representative."  (Compl. Ex. A ¶ 7.2(C); Ex. C ¶ 7.2(C); Ex. E ¶ 7.2(C).)

1721688.3

## **ARGUMENT**

Plaintiffs claim that Motorola promised them that its manufacturer representative business model was a long-term strategy.  The Agreements, however, specified a one-year duration, permitted renewal only pursuant to a new signed written agreement, and allowed either party to terminate without cause after 180 days.  Moreover, plaintiffs seek damages that are expressly precluded by the Agreements, including punitive damages, and plaintiffs have asserted claims that are plainly unfounded under the governing Arizona law, including their negligent misrepresentation claim and their "deceptive trade practices" claim under the Arizona Consumer Fraud Act.

Motorola moves to dismiss plaintiffs' deceptive trade practices, negligent misrepresentation, fraud, promissory estoppel, and punitive damages claims pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6):  (1) plaintiffs' deceptive trade practices claim fails under governing Arizona law because plaintiffs did not buy merchandise from Motorola, nor do they allege they were the target of deceptive product advertising; (2) plaintiffs' negligent misrepresentation claim is precluded under governing Arizona law; (3) plaintiffs' punitive damages requests are precluded under Arizona law by the limitation of liability provisions in the parties' agreements; and (4) plaintiffs have failed to plead their negligent misrepresentation, fraud, and deceptive trade practices/consumer fraud claims with particularity, as required by Rule 9(b).

Additionally, GLW's breach of contract claim relating to Motorola's alleged failure to disclose a purported "moratorium" on the execution of manufacturer's representative agreements should be dismissed because Motorola had no contractual relationship with GLW at the time of the so-called "moratorium" and otherwise had no contractual obligation to make such a disclosure.

1721688.3

## I.    Arizona Law Governs.

Each of the Agreements contains an Arizona choice of law provision. (*Id.* Ex. A ¶ 9.7; Ex. C ¶ 9.7; Ex. E ¶ 9.7.) These provisions should be enforced, and, in fact, this Court recently did just that in *J-Squared Technologies, Inc. v. Motorola, Inc.*, 364 F. Supp. 2d 449 (D. Del. 2005). That case contains the same allegations of Motorola wrongdoing regarding the manufacturer's representative program. Addressing the choice-of-law issue there, this Court upheld identical provisions as follows:

> A federal court sitting in diversity jurisdiction must apply the choice of law rules from its forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Delaware has adopted Restatement (Second) of Conflict of Laws. *See Travelers Indem. Co. v. Lake*, 594 A.2d 38, 41, 47 (Del. 1991). The court determines that it should apply Arizona law in order to protect the expectations of the parties, who elected to have Arizona law govern their contract, and to ensure uniform adjudication of plaintiffs' claims. *See* Restatement (Second) of Conflict of Laws § 188 comment b.

*J-Squared*, 364 F. Supp. 2d at 452 n.7.

For the same reasons, Arizona law controls here.

## II.    Plaintiffs Cannot Maintain a Deceptive Trade Practices Claim.

In *J-Squared*, this Court found that two other former manufacturer's representatives could not maintain an action against Motorola for violation of Arizona's consumer fraud statutes as a result of the termination of their agreements. *See* 364 F. Supp. 2d at 451-52. Not dissuaded, plaintiffs (represented by the same counsel as the *J-Squared* plaintiffs) make the same claim here, but change the title of that claim from "Consumer Fraud" to "Deceptive Trade Practices." Whatever name they choose to give it, this claim fails.

Plaintiffs allege that Motorola violated its "statutory duty to refrain from engaging in deceptive trade practices with its manufacturer's representatives" "under all potentially applicable law (including Arizona, California, Maryland, and New Jersey)." (Compl. ¶ 95.) As just explained in section I, Arizona law governs. And, while not referenced, the only Arizona "statutory duty" that plaintiffs could be referring to is under Arizona's

Consumer Fraud Act, which makes it unlawful to use a "deceptive act or practice" in selling merchandise. A.R.S. § 44-1522(A). Cases and commentators recognize that Arizona polices deceptive trade practices through its consumer fraud statutes. *See, e.g.*, *In re Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328, 332 (N.D. Ill. 2002) (referring to the consumer fraud statutes as the Arizona Deceptive Trade Practices Act); William A. Lovett, *State Deceptive Trade Practice Legislation*, 46 Tul. L.Rev. 724 (1972) (reviewing state deceptive trade practice legislation, including Arizona's Consumer Fraud Act).

Accordingly, the issue is whether plaintiffs can maintain a claim under the Arizona Consumer Fraud Act.[3] As with the *J-Squared* plaintiffs, they cannot.

Arizona's Consumer Fraud Act makes it illegal to misrepresent a material fact "in connection with the sale or advertisement of any merchandise." A.R.S. § 44-1522(A). "The clear intent of this provision is to protect unwary buyers from unscrupulous sellers." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992); *see also J-Squared*, 364 F. Supp. 2d at 452 (quoting *Sutter*). The Act does not apply where, as here, the plaintiffs did not buy products from the defendant, nor were they the target of any allegedly deceptive product advertising. *Sutter*, 971 F.2d at 407; *J-Squared*, 364 F. Supp. 2d at 452.

Just like the plaintiffs in *J-Squared*, plaintiffs here "were hired as 'manufacturer representatives' for defendant's [Motorola's] products." 364 F. Supp. 2d at 452; (*see also* Compl. Ex. A ¶ 2.1; Ex. C ¶ 2.1; Ex. E ¶ 2.1.) And just as in that case, "[a]greeing to market [Motorola] products does not amount to the purchase of merchandise, and does not qualify plaintiffs as buyers under the Act." *J-Squared*, 364 F. Supp. 2d at 452; *see also Sutter*, 971 F.2d at 404-07 (finding that a terminated distributor could not maintain an

---

[3] To the extent that plaintiffs rely on some other sources of Motorola's "statutory duty," it cannot be fairly discerned from their Complaint, and Motorola moves for a more definite statement of this claim under Federal Rule of Civil Procedure 12(e).

1721688.3

action against the manufacturer under Arizona's Consumer Fraud Act because the distributor was neither a buyer of the product nor the target of the manufacturer's advertising).  Thus, plaintiffs have no claim against Motorola under the Arizona Consumer Fraud Act, and their deceptive trade practices claim under that Act should be dismissed.[4]

## III.    Plaintiffs' Negligent Misrepresentation Claim Fails.

Plaintiffs' negligent misrepresentation claim fails because (1) they have not alleged a misrepresentation of fact and (2) it is barred by Arizona's economic loss doctrine.

### A.    *There is No Alleged Misrepresentation of Fact.*

Plaintiffs' negligent misrepresentation claim is based on the allegation that "Motorola represented, unequivocally, that it had a long-term strategy to maintain the manufacturer's representatives business models."  (Compl. ¶ 17.)  However, plaintiffs contend, "at no time did Motorola hold a belief or intention that its proposed manufacturer's representative business model would, in fact, be a long-term relationship or solution."  (Compl. ¶ 18.)  Even if this were true—it isn't—such a representation, as a matter of law, cannot be the basis for plaintiffs' claim:

---

[4] As noted above, plaintiffs indicate that they are asserting this claim "under all potentially applicable law."  (Compl. ¶ 95.)  While Arizona law governs, (*see* section I, *supra*), the same reasoning supports dismissal under the law of each of the other states referenced in the Complaint:  New Jersey, California, and Maryland.  *See, e.g.*, *J&R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1271-73 (3d Cir. 1994) (finding that franchisee suing over the sale of a franchise was not an ordinary consumer in the marketplace and, accordingly, could not state a claim under New Jersey's Consumer Fraud Act); *Von Grabe v. Sprint PCS,* 312 F. Supp. 2d 1285, 1303 (S.D. Cal. 2003) (holding that a violation of the California Consumer Legal Remedies Act may only be alleged by a consumer); *Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 692 (D. Md. 2001) (holding that a violation of the Maryland Consumer Protection Act may only be alleged by a consumer and that a commercial entity did not qualify).  Again, to the extent that plaintiffs are claiming some other sources of Motorola's "statutory duty," it is not apparent from their Complaint, and Motorola moves for a more definite statement of this claim under Federal Rule of Civil Procedure 12(e).

> Negligent misrepresentation requires a misrepresentation or omission of a *fact*. A promise of future conduct is not a statement of fact capable of supporting a claim of negligent misrepresentation.

*McAlister v. Citibank*, 829 P.2d 1253, 1261 (Ariz. App. 1992); *see also Arnold & Associates, Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1029 (D. Ariz. 2003) (dismissing claim for negligent misrepresentation that "involve promises concerning future events").

Here, plaintiffs' claim is based entirely on a promise of future conduct. The issue is not whether Motorola had a manufacturer's representatives business model (it plainly did); rather, the question, as framed by plaintiffs, is whether Motorola intended for that model to be a "long-term" solution or a "stop-gap" measure. (*E.g.*, Compl. ¶ 70.) That is a question of duration, and Motorola's alleged promise that the model represented a long-term solution is just that—a promise of how Motorola would act in the future. That is not the stuff of negligent misrepresentation. *See, e.g.*, *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. Rptr. 2d 861, 863-64 (Cal. App. 1991) (concluding there is no negligent misrepresentation cause of action for a "negligent false promise"). This is consistent with the Mississippi Supreme Court's rationale in *Bank of Shaw v. Posey*, the case relied on by the Arizona Court of Appeals relied on in *McAlister*:

> [The trial court] improperly instructed the jury that if [defendant's employee] made a *promise* of future conduct, then [defendant] was liable to [plaintiffs] for any damages which flowed from their reliance on that promise. The promise of future conduct is, as a matter of *law*, not such a representation as will support recovery under a theory of negligent misrepresentation."

573 So. 2d 1355, 1360 (Miss. 1990). And the Second Circuit followed this same reasoning in rejecting a plaintiff's efforts to re-frame promises of future conduct as present facts:

> In addition to claiming fraudulent misrepresentation, [plaintiff] also claims that his . . . superiors were negligent in promising promotions and job transfers. These negligent misrepresentation claims, however, all suffer from a common defect. Promises of future conduct are not actionable as

> negligent misrepresentations. . . . [Plaintiff's] efforts to frame broken
> promises into misrepresentations of present facts are fruitless.  Clearly,
> [Plaintiff] complains of no more than breach of promises of future conduct
> regarding promotions and transfers. His complaints are not actionable under
> a negligent misrepresentation theory.

*Murray v. Xerox Corp.*, 811 F.2d 118, 123-24 (2d Cir. 1987).  Here, as in *Posey* and

*Murray*, plaintiffs' claim—based on allegations of promises of a "long-term" use of the

manufacturer's representatives business model—is impermissibly "premised upon a

promise of future conduct."  *McAlister*, 829 P.2d at 1261.  Those alleged promises cannot

be pled as misrepresentations of present fact, and, accordingly, the negligent

misrepresentation claim must be dismissed.

  **B.**  *The Economic Loss Doctrine Bars Plaintiffs' Claim.*

  Additionally, under Arizona's economic loss rule, negligent misrepresentation

claims are precluded where, as here, a plaintiff claims to have suffered only pecuniary

injury as a result of the conduct of another.  *Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477,

479-81 (9th Cir. 1995) (upholding dismissal of negligent misrepresentation claim);

*Carstens v. City of Phoenix*, 75 P.3d 1081, 1083 (Ariz. App. 2003) ("The economic loss

rule bars a party from recovering economic damages in tort unless accompanied by

physical harm.").  In such circumstances, "the claimant is limited to recovery under the

law of contract."  *Apollo Group*, 58 F.3d at 479.

  In *J-Squared*, the Court found the economic loss doctrine inapplicable because the

case "is one for services" and thus "the UCC does not apply."  *J-Squared*, 364 F. Supp. 2d

at 453-54 (citing *Apollo Group* and *Carstens*).  With due respect, we believe that the Court

was mistaken.

  Prior to *J-Squared*, no case held that the economic loss doctrine in Arizona was

limited to UCC cases.  To the contrary, in *Carstens v. City of Phoenix*, the Arizona Court

of Appeals applied the doctrine to bar non-UCC claims—the claims turned on the city's

alleged failure to properly inspect real property for construction defects—and cited similar

1721688.3

cases in doing so.  75 P.3d 1081, 1083-84 (Ariz. App. 2003); *see also* Edward P. Ballinger, Jr. & Samuel T. Thumma, *The History, Evolution & Implications of Arizona's Economic Loss Rule*, 34 Ariz. St. L.J. 491, 502 (2002) ("Does Arizona's economic loss rule apply to common law contracts?  Yes.").

The *J-Squared* Court also stated, seemingly as *dicta*, that the economic loss doctrine did not apply because the alleged misrepresentations regarding renewal of the contracts were "not covered by the contract" and thus not barred.  364 F. Supp. 2d at 454. However, in Arizona, the rule is that no economic damages flowing from alleged tortious conduct can be recovered "unless accompanied by physical harm."  *Carstens*, 75 P.3d at 1083.  And this is true even if the plaintiff is left without a contractual remedy:

> Arizona courts have never held that the application of the economic loss rule depends upon the plaintiff also having a viable contract claim against the defendant. Irrespective of a plaintiff's contractual claims against a defendant, the rule bars recovery of economic damages in tort because such damages are not cognizable in tort absent actual [*i.e.*, non-economic] injury.

75 P.3d at 1085.

Here, as in *Carstens*, there is no alleged non-economic injury.  And the issue of contract duration and termination was plainly addressed in the parties' contracts. Accordingly, the economic loss doctrine precludes plaintiffs' negligent misrepresentation claim.

## IV.    Plaintiffs Cannot Recover Punitive Damages.

Plaintiffs expressly agreed in their written contracts with MCG that they cannot recover punitive damages:

> IN NO EVENT, WHETHER FOR BREACH OF CONTRACT, WARRANTY, MOTOROLA'S NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE WILL MOTOROLA BE LIABLE FOR INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES . . . .

13

(Compl. Ex. A ¶ 3.8; Ex. C ¶ 3.8; Ex. E ¶ 3.8 (capitalization in original).)  Instead, plaintiffs agreed that the payment obligations set forth in the Agreements "shall be Representative's sole remedy for the termination or nonrenewal of this Agreement" (Compl. Ex. A ¶ 7.4; Ex. C ¶ 7.4; Ex. E ¶ 7.4.)  These provisions preclude plaintiffs' requests for punitive damages.[5]

Under Arizona law, "[a] contract provision governing remedies or damages is generally binding on the parties."  *Dixon v. City of Phoenix*, 845 P.2d 1107, 1112 (Ariz. App. 1992).  And, in *J-Squared*, this Court followed that rule, finding that "§ 3.8 precludes claims for punitive damages under the [manufacturer's representative] agreements."  364 F. Supp. 2d at 455.  In both this case and that one, plaintiffs all agreed with Motorola upon the sole remedy for the termination or nonrenewal of their Agreements.  (*See* Compl. Ex. A ¶ 7.4; Ex. C ¶ 7.4; Ex. E ¶ 7.4.)  They should be held to their bargain, and their claims for punitive damages should be dismissed.

## V.    Plaintiffs' Deceptive Trade Practices, Fraud, and Negligent Misrepresentation Claims Fail to Comply With Rule 9(b).

Plaintiffs' conspiracy theory is far-fetched.[6]  They appear to claim that Motorola employees decided to use the manufacturer's representative business model as a stop-gap measure to offset lay-offs of Motorola salespeople; that, to induce manufacturer's representatives to sign on, numerous Motorola employees lied to the prospective representatives for months and months at a time, telling them that the business model was a long-term solution; that, in reliance on these representations, plaintiffs then signed

---

[5] Plaintiffs disavowed not only punitive damages, but also any "compensation, reimbursement, or damages for:  A.  Loss of prospective compensation; B.  Goodwill or loss thereof; or C.  Expenditures, investments, leases, or any type of commitment made in connection with the business of such party or in reliance on the existence of this Agreement."  (Compl. Ex. A ¶ 7.4; Ex. C ¶ 7.4; Ex. E ¶ 7.4.).

[6] While the Court cannot weigh this evidence in a motion to dismiss, the outlandish nature of the claims underscores the need for specificity in alleging fraud claims.

1721688.3

agreements with Motorola (ironically, for only a <u>one-year</u> term[7]); and that, after getting "confidential and proprietary information" from the representatives, forcing them to drop competing lines, and forcing them to incur expenses to develop Motorola's line, Motorola's employees terminated the program.  (*E.g.*, Compl. ¶¶ 14-20, 22, 38, 51, 66, 72-73.)

Besides being baseless, plaintiffs' claims are not pled with the specificity required by Rule 9(b), which applies to all claims that are based on fraud, including claims for consumer fraud and for negligent misrepresentation of a material fact.  *FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (affirming dismissal of consumer fraud claim under Rule 9(b)); *In re Student Finance Corp.*, No. Civ.A. 03-507 JJF, 2004 WL 609329, *2 (D. Del. 2004)[8] (dismissing negligent misrepresentation claim for failure to comply with Rule 9(b)).

"In order to satisfy Rule 9(b), plaintiffs must plead with particularity 'the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are changed, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'"  *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984))).  The complaint (1) "must allege who made a misrepresentation to whom and the general content of the misrepresentation," and (2) must also plead either "the 'date, place or time' of the fraud," or provide "'alternate means of injecting precision and some measure of substantiation into their allegations of fraud.'"  *Lum*, 361 F.3d at 224 (quoting *Seville*, 742 F.2d at 791).

---

[7] (Compl. Ex. A ¶¶ 7.1 & 7.2; Ex. C ¶¶ 7.1 & 7.2; Ex. E ¶¶ 7.1 & 7.2.)  Notably, despite their purported concerns about the business model's duration, <u>none</u> of the plaintiffs alleged that their own contracts were for anything other than a one-year term.

[8] Pursuant to Local Rule 7.1.3, a copy of the *Student Finance* decision is attached as Ex. B.

1721688.3

Any efforts that plaintiffs made to comply with this standard are illusory.  Plaintiffs allege very broad claims for relief based on purported Motorola misrepresentations, while only feigning compliance with Rule 9(b).  For example, in instances where plaintiffs identify Motorola personnel who allegedly made representations—which they do not always do (Compl. ¶¶ 51, 82)—they generally go on to state vaguely that the representations were also made by "others" or that the representations were made by Motorola personnel "including" those specifically identified.  (Compl. ¶¶ 17, 22, 72, 89.) They do the same thing when identifying plaintiffs' personnel to whom the representations were made, (Compl. ¶ 22), although, most often, these individuals are never specified, (Compl. ¶¶ 38, 51, 72, 89).  And, as far as the timing of representations, at most, plaintiffs provide date ranges by the month.  (Compl. ¶ 22 (five month range); ¶ 38 (two month range); ¶ 51 (two month range).)  That's not enough.

One of the fundamental reasons for Rule 9(b) is that, with fraud and related claims, "a defendant needs a substantial amount of particularized information about the plaintiff's claim in order to enable him to understand it and effectively prepare a responsive pleading and an overall defense of the actions."  5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1296, at 39 (3d ed. 2004); *see also Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 284 (D. Del. 1993) (recognizing that Rule 9(b) "puts defendant on notice as to the conduct complained of so defendant will have information adequate to form a defense" and also "prevents fraud action in which all the facts are learned after the complaint is filed by way of discovery").  Plaintiffs have not provided this information. We still do not know <u>who</u> made all the representations that plaintiffs complain of, we do not know <u>to whom</u> these representations were made, and we only have a vague sense of <u>when</u> they were made.  By leaving the door open to allege additional representations by unidentified Motorola personnel to unidentified plaintiffs personnel—and by imprecisely listing many people without attributing specific comments to them—plaintiffs can move

1721688.3

the target of their fraud allegations without technically straying beyond their Complaint. Because Rule 9(b) was designed to prevent such conduct, plaintiffs have not adequately pled their consumer fraud, fraud, and negligent misrepresentation claims, and these claims should be dismissed.

## VI.    GLW's Breach of Contract Claim Based on Motorola's "Moratorium" Fails.

GLW entered into its Agreement with Motorola in June 2003.  (Compl. Ex. E.) Ironically, plaintiffs allege that, before entering into the GLW Agreement (plaintiffs say "[a]s late as April 2003"), Motorola had purportedly placed a "moratorium . . . on the execution of all additional manufacturer's representative agreements."  (Compl. ¶ 68.) GLW claims that Motorola breached its Agreement with GLW by "failing to disclose that a moratorium was placed on the execution of all further manufacturer's representative agreements."  (Compl. ¶ 75.)

Hardly.

First, GLW's Agreement with Motorola was not even effective until June 2003 (GLW did not sign it until the end of May 2003)—at least two months <u>after</u> Motorola supposedly failed in its contractual obligations to inform GLW of this alleged "moratorium."  Motorola could not have breached its agreement with GLW before that agreement came into existence.  Second, there is no express provision in the GLW Agreement that could be construed to require such a disclosure of internal Motorola discussions predating the parties' agreement.  (Compl. Ex. E.)  Accordingly, GLW's breach of contract claim based on Motorola's failure to disclose a "moratorium" should be dismissed.

## CONCLUSION

In light of the foregoing, Motorola requests that the Court dismiss plaintiffs' claims for consumer fraud/deceptive trade practices, negligent misrepresentation, and punitive

1721688.3

damages, as well as GLW's breach of contract claim based on Motorola's failure to disclose a "moratorium."

        YOUNG CONAWAY STARGATT & TAYLOR, LLP


/s/ William W. Bowser
William W. Bowser (No. 2239)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Of Counsel:

LEWIS AND ROCA LLP
Randy Papetti
Cory A. Talbot
Emily S. Cates
40 N. Central Avenue
Phoenix, Arizona 85004
(602) 262-5311

Attorneys for Defendant


DATED: April 10, 2006.

18

1721688.3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

G.L. WILLIAMS ASSOCIATES, INC.;    )
RT TECHNOLOGY, LLC.; and WEST    )
COAST REPS, INC.,    )
        Plaintiffs,    )
    v.    )    C.A. No. 06-cv-00114-SLR
    )
MOTOROLA, INC., a Delaware    )
corporation.    )
        Defendant.    )

**EXHIBIT A TO
DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION FOR MORE DEFINITE STATEMENT**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ William W. Bowser
William W. Bowser, Esquire (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
Email: wbowser@ycst.com
Attorneys for Defendant

# CORPORATE CHARTER APPROVAL SHEET
## ** EXPEDITED SERVICE **        ** KEEP WITH DOCUMENT **

DOCUMENT CODE _40_    BUSINESS CODE _____

# _____

Close _____    Stock _____    Nonstock _____

P.A. _____    Religious _____

Merging (Transferor) _____

_____

_____

_____

Surviving (Transferee) _____

_____

_____

_____

```
1000361989018068

ID # W07643992 ACK # 1000361989018068
LIBER: B00578 FOLIO: 0945 PAGES: 0002
RT TECHNOLOGY, LLC

10/31/2003  AT 05:53 P WO # 0000808140
```

New Name _____

_____

_____

### FEES REMITTED

|  |  |
|---|---|
| Base Fee: | _100_ |
| Org. & Cap. Fee: | _____ |
| Expedite Fee: | _50_ |
| Penalty: | _____ |
| State Recordation Tax: | _____ |
| State Transfer Tax: | _____ |
| Certified Copies | _____ |
| Copy Fee: | _____ |
| Certificates | _____ |
| Certificate of Status Fee: | _____ |
| Personal Property Filings: | _____ |
| Other: | _____ |
| TOTAL FEES: | _150_ |

_____ Change of Name
_____ Change of Principal Office
_____ Change of Resident Agent
_____ Change of Resident Agent Address
_____ Resignation of Resident Agent
_____ Designation of Resident Agent
and Resident Agent's Address
_____ Change of Business Code

_____ Adoption of Assumed Name

_____ Other Change(s)

_____

_____

Credit Card __✓__    Check _____    Cash _____

Code _____

Attention: _____

_____ Documents On _____ Checks

Approved By: _HO 013_

Keyed By: _____

Mail to Address:

COMMENT(S):

_Spencer Stephens_
_401 E Jefferson St_
_# 208_

_Rockville_
_Md 20850_

```
CUST ID:0001230654
WORK ORDER:0000808140
DATE:11-04-2003 03:02 PM
AMT. PAID:$150.00
```

# ARTICLES OF ORGANIZATION

The undersigned, with the intention of creating a Maryland Limited Liability Company files the following Articles of Organization:

(1)    The name of the Limited Liability Company is: _____ RT Technology, LLC _____

_____

_____

(2)    The purpose for which the Limited Liability Company is filed is as follows: _____
To sell and market computers, computer systems and for all other lawful purposes.

_____

(3)    The address of the Limited Liability Company in Maryland is _____
19012 Raines Drive, Rockville MD 20855

(4)    The resident agent of the Limited Liability Company in Maryland is _____
Spencer K. Stephens, Esq.

whose address is _____ 401 East Jefferson Street, Suite 208, Rockville MD 20850 _____

_____

(5)    Spencer K. Stephens, Esq.
401 E Jefferson St., Ste 208
Rockville MD 20850

_____ Authorized Person(s) _____

(6)    _____ Spencer K. Stephens _____
Resident Agent

**Filing party's return address:**

(7)    Spencer K. Stephens, Esq.

401 East Jefferson St., Suite 208

Rockville MD 20850

CUST ID:0001238654
WORK ORDER:0000808140
DATE:11-04-2003 03:02 PM
AMT. PAID:$150.00

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

G.L. WILLIAMS ASSOCIATES, INC.;      )
RT TECHNOLOGY, LLC.; and WEST        )
COAST REPS, INC.,                    )
                     Plaintiffs,     )
                                     )
            v.                       )    C.A. No. 06-cv-00114-SLR
                                     )
MOTOROLA, INC., a Delaware           )
corporation.                         )
                     Defendant.      )


**EXHIBIT B TO
DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION FOR MORE DEFINITE STATEMENT**


YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ William W. Bowser
William W. Bowser, Esquire (Bar I.D. 2239)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
Email: wbowser@ycst.com
Attorneys for Defendant

# Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 609329 (D.Del.)

**(Cite as: 2004 WL 609329 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
In re: STUDENT FINANCE CORPORATION,
Debtor.
STUDENT FINANCE CORPORATION, Plaintiff,
v.
ROYAL INDEMNITY CO., Defendant.
**No. 02-11620, Civ.A. 03-507 JJF, 02-6803 LK.**

March 23, 2004.

L. Jason Cornell, of Fox Rothschild LLP, Wilmington, Delaware, Hal Baume, of Fox Rothschild LLP, Lawrenceville, New Jersey, David A. Gradwohl, Andrew W. Bonekemper, and Anthony P. DeMichele, of Fox Rothschild LLP, Lansdale, Pennsylvania, for Plaintiff/Debtor Student Finance Corporation, of counsel.

Lawrence C. Ashby, Philip Trainer, Jr., and Gregory A. Taylor, of Ashby & Geddes, Wilmington, Delaware, Michael H. Barr, Peter D. Wolfson, and Kenneth J. Pfaehler, of Sonnenschein Nath & Rosenthal, New York, New York, Alan S. Gilbert, of Sonnenschein Nath & Rosenthal, Chicago, Illinois, for Defendant Royal Indemnity Company, of counsel.

*OPINION*

FARNAN, J.

**\*1** Presently before the Court is Defendant Royal Indemnity Company's ("Royal") Motion To Dismiss. (D.I.6.) [FN1] For the reasons set forth below, the Court will grant in part and deny in part Royal's Motion.

FN1. The docket item numbers referenced herein are the docket items in the adversary proceeding *Student Finance Corporation v. Royal Indemnity Co.,* Adversary Proceeding Number 02-06803 LK.

## BACKGROUND

This is an adversary proceeding arising from the Chapter 11 bankruptcy filing *In re Student Finance Corporation.* The parties to this adversary proceeding stipulated to the withdrawal of the reference to the bankruptcy court, which was granted by Chief Judge Robinson. The instant action was subsequently assigned to this Court.

Student Finance Corporation ("SFC") engages in the origination and purchasing of student loans, primarily for truck driving school students. [FN2] SFC, along with its affiliates, obtained funds to purchase and originate student loans from warehouse lines of credit provided by the Wilmington Trust Co. and PNC Bank. Once SFC exhausted these warehouse lines of credit, SFC and its affiliates packaged loans it purchased or originated into portfolios and sold them on the secondary market (the "securitizations") to financial institutions or insurance companies. To continue selling its portfolios on the secondary market, SFC required credit risk insurance which it obtained from AIG. In 1999, AIG discontinued this line of insurance. Thereafter, SFC obtained credit risk insurance from Royal.

FN2. As the instant motion is a motion to dismiss, the Court has taken the facts from SFC's Complaint.

Royal continued to provide SFC with credit risk insurance for its securitizations through November of 2001. In December of 2001, SFC alleges that Royal verbally agreed to issue it one more credit risk insurance policy. In February of 2002, Royal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 2

Not Reported in F.Supp.2d, 2004 WL 609329 (D.Del.)

**(Cite as: 2004 WL 609329 (D.Del.))**

was told by its parent company to discontinue issuing credit risk insurance. Royal subsequently announced that it was exiting the credit risk insurance business; however, SFC alleges that Royal assured it that Royal would issue one last policy. SFC alleges that Royal later stated that it would only consider doing so if SFC executed two promissory notes (the "Notes") whereby SFC agreed to borrow approximately twelve million dollars from Royal that would be used to make forbearance payments to Wells Fargo, who was the trustee of the securitizations. All the proceeds of the Notes went directly to Wells Fargo.

SFC alleges that after it complied with Royal's request Royal never issued SFC the credit risk insurance policy as promised. SFC alleges that, in reliance on Royal's promises, it continued to approve and fund student loans. In its Complaint (D.I.1), SFC asserts six claims against Royal. This is Royal's Motion to Dismiss Counts I and II pursuant to Rule 9(b) and Counts I-VI pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### STANDARDS OF REVIEW
I. Rule 9(b)

Rule 9(b) requires a party alleging fraud or mistake to plead with particularity the circumstances constituting its claims. Fed.R.Civ.P. 9(b). The intent behind Rule 9(b) is to give defendants notice of the claims against them and to reduce the number of frivolous actions. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1418 (3d Cir.1997). Rule 9(b) does not require the recitation of "every material detail of the fraud such as date, location and time[; however,] plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud." ' *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir.2002) (quoting *In re Nice Sys .,* 135 F.Supp.2d 551, 557 (D.N.J.2001)).

II. Rule 12(b)(6)

*\*2* A motion to dismiss tests the legal sufficiency of the complaint. *Conley v. Gibson,* 355 U.S. 41,

45-56 (1957). In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts "must accept as true the factual allegations in the [c]omplaint and all reasonable inferences that can be drawn therefrom." *Langford v. City of Atlantic City,* 235 F.3d 845, 847 (3d Cir.2000). A court will grant a motion to dismiss only when it appears that a plaintiff could prove no set of facts that would entitle him or her to relief. *Id.*

### DISCUSSION
I. Whether SFC Has Pled With Particularity Fraud And Negligent Misrepresentation

Royal contends that Counts I, negligent misrepresentation, and II, fraud, of SFC's Complaint should be dismissed because SFC has failed to plead these claims with particularity as required by Rule 9(b). Royal contends that SFC's Complaint does not identify the speaker of the alleged misrepresentations nor, with one exception, to whom the false statements were made. Royal also contends that SFC asserts only generalized and conclusory descriptions of misrepresentations made by Royal. SFC responds that the Rule 9(b) standard is generous in the Third Circuit and that its allegations of fraud and negligent misrepresentation satisfy Rule 9(b)'s requirements. In addition, SFC requests, in the event the Court agrees with Royal, that it be granted leave to amend its Complaint.

After reviewing the Complaint in light of the Rule 9(b) standards recited above, the Court concludes that SFC has failed to satisfy the pleading requirements of Rule 9(b). Nowhere in its Complaint does SFC identify the speaker of Royal's alleged misrepresentations. This is a failure to satisfy the particularity requirements of Rule 9(b). *See Klein v. Gen. Nutrition Co., Inc.,* 186 F.3d 338, 345 (3d Cir.1999) (stating that Rule 9(b) "requires, at a minimum, that the plaintiff identify the speaker of the fraudulent statements .") Although SFC contends that, according to *Brown v. SAP America, Inc.,* 1999 WL 803888 (D.Del. Sept. 13, 1999), a plaintiff need not identify the speaker of the alleged misrepresentation to satisfy Rule 9(b)'s requirements, to the extent *Brown'* s holding

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 2004 WL 609329 (D.Del.)

**(Cite as: 2004 WL 609329 (D.Del.))**

conflicts with *Klein v. General Nutrition Co., Inc.,* the Court declines to extend *Brown* to the facts in this case. *See also F.D.I.C. v. Bathgate,* 27 F.3d 850, 876 (3d Cir.1994) (holding that a failure to identify the speaker of alleged misrepresentations amounted to a failure to satisfy Rule 9(b)); *Liafail, Inc. v. Learning 2000, Inc.,* 2002 WL 31667861, at *4 (D.Del. Nov. 25, 2002).

The Court also concludes that SFC's allegations of material omissions fail to satisfy Rule 9(b)'s pleading requirements. SFC bases, in part, its fraud and negligent misrepresentation claims on material omissions by Royal, yet never identifies what facts withheld by Royal induced SFC to act. Moreover, although courts cannot expect plaintiffs to have access to information sufficient to satisfy a detailed application of Rule 9(b) in all cases, in the instant case, SFC does not contend that information it needs to satisfy Rule 9(b)'s particularity requirements is exclusively within Royal's control. *See F.D.I.C.,* 27 F.3d at 876. Therefore, SFC has given the Court no reason to relax "the normally rigorous particularity rule" based upon lack of knowledge or control. *Burlington,* 114 F.3d at 1418 . Accordingly, to the extent Counts I and II of SFC's Complaint are based on material omissions by Royal, the Court concludes that SFC has failed to satisfy Rule 9(b). [FN3]

> FN3. Royal also contends that *Brug v. The Enstar Group, Inc.,* 755 F.Supp. 1247 (D.Del.1991), and *Brown v. The Buschman Co.,* 2002 WL 389139 (D.Del.2002), compel the Court to dismiss Counts I and II of SFC's Complaint for failure to adequately plead scienter. Because the Court concludes that *Brug* and *Brown* are distinguishable from the facts in this case, the Court disagrees. The plaintiffs in *Brug* and *Brown* made only general averments, without any supporting facts, of intent or scienter. *Brug,* 755 F.Supp. at 1254-55; *Brown,* 2002 WL 389139, at *8. Therefore, the *Brug* and *Brown* courts concluded that they had no choice but to dismiss the plaintiffs' claims. In this case, however, SFC has identified

facts by which the Court infers intent. In paragraphs 31 and 33 of its Complaint (D.I.1), SFC alleges that Royal indicated that it would extend additional credit risk insurance following its announcement that it was leaving the credit risk insurance business if SFC would agree to borrow money from Royal to be used in making forbearance payments to Wells Fargo. SFC alleges that it complied with Royal's condition, but that Royal never extended additional credit risk insurance. The Court concludes that these facts are sufficient by which to infer intent or scienter.

*3 In sum, the Court concludes that Counts I and II of SFC's Complaint fail to satisfy the pleading requirements of Rule 9(b). [FN4]

> FN4. In its reply brief (D.I.18), Royal contends for the first time that all of SFC's claims are based on allegations of fraud, and therefore, if the Court finds that SFC has failed to properly plead Counts I and II, then all of SFC's claims must be dismissed. Without addressing the merits of Royal's arguments, the Court concludes that Royal is not entitled to dismissal of the remaining claims of SFC's Complaint on Rule 9(b) grounds. Rule 7.1.3 of the Local Rules for the District of Delaware ("Local Rule 7.1.3") provides that "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." D. Del. L.R. 7.1.3(c)(2). The practice of reserving arguments for reply briefs "amounts to impermissible 'sandbagging.' " *Rockwell Tech., LLC v. Spectra-Physics Lasers, Inc.,* 2002 WL 531555 (D.Del. March 26, 2002) (quoting *Jordan v. Bellinger,* 2000 U.S. Dist. LEXIS 19233, *18 (D. Del. April 28, 2000)). By waiting until its reply brief to assert that all of SFC's claims should be dismissed pursuant to Rule 9(b), Royal has violated Local Rule 7.1.3. Accordingly, the Court rejects Royal's attempt to dismiss

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 609329 (D.Del.)

**(Cite as: 2004 WL 609329 (D.Del.))**

SFC's remaining claims under Rule 9(b).

## II. Whether Counts I-VI State A Claim Upon Which Relief May Be Granted

### A. *Counts I And II, Negligent Misrepresentation And Fraud*

Under Delaware law, to state a claim of common law fraud a plaintiff must plead: 1) a false representation made by the defendant, usually one of fact; 2) the defendant's knowledge or belief that the statement was false; 3) an intent to induce the plaintiff to act; 4) the plaintiff's justifiable reliance upon the representation; and 5) damage to the plaintiff as a result. *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del.1983). The only difference between an action for fraud and negligent misrepresentation is that, with a claim of negligent misrepresentation, the plaintiff need not plead that the defendant knew or believed that his or her statement was false or that he or she proceeded in a reckless disregard for the truth. *Id.* By its Motion, Royal seeks to dismiss Counts I and II for failure to plead elements 1, 4, and 5.

### 1. *Statement Of A Material Fact*

Royal contends that SFC has not adequately pled the existence of a material fact because the statements SFC alleges were false or negligent concern future undertakings. (D.I. 7 at 8.) SFC responds that the Court should not be persuaded by Royal's arguments because a claim for fraud may be based upon statements of future results.

Under Delaware law, "[o]pinions and statements as to probable future results are not generally fraudulent even though they relate to material matters." *Esso Standard Oil Co. v. Cunningham,* 114 A.2d 380, 383 (Del. Ch.1955); *Craft v. Bariglio,* 1984 WL 8207, at *8 (Del. Ch. March 1, 1984). Applying this principle and the Rule 12(b)(6) standard of review to the allegations in SFC's Complaint, the Court concludes that it would be premature to dismiss Counts I and II for failure to plead a material fact.

In its Complaint, SFC alleges that after Royal made a public announcement that it was leaving the credit risk insurance business, "Royal continued to represent to SFC that one more policy *would* be issued to SFC." (D.I. 1 at ¶ 31) (emphasis added). Further, SFC alleges that Royal contacted SFC's CEO and "told him that Royal would consider providing credit risk insurance for another securitization if SFC agreed to borrow money from Royal to be used to make 'forbearance payments' to Wells Fargo." *Id.* at ¶ 33. Taken as true, SFC's assertions constitute more than mere "[o]pinions and statements as to probable future results." *See Esso Standard,* 114 A.2d at 383. Thus, the Court concludes that the combined effect on SFC of Royal's statements of intent to issue a new policy suffice, for the purposes of this Motion, to plead the existence of misstatements or negligent misrepresentations made to induce SFC to borrow money from Royal.

### 2. *Justifiable Reliance*

*4 Royal contends that SFC has not pled justifiable reliance because, in the circumstances of this case, a reasonable person would not have relied upon a verbal commitment that Royal would issue an additional credit risk insurance policy. In response, SFC contends that its reliance upon Royal's misrepresentations was justifiable because, unlike the precedent relied upon by Royal, in this case there was no written agreement between the parties that made Royal's oral assurances unworthy of SFC's reliance.

Delaware courts follow the Restatement's definition of justifiable reliance. *See Lock v. Schreppler,* 426 A.2d 856, 863 (Del.Super.1981), *superceded by statute in part on other grounds as stated in, Amato & Stella Assoc. v. Florida North Inv ., Ltd.,* 678 F.Supp. 445, 448 (D.Del.1988). In order to plead justifiable reliance based on a statement of intention, a plaintiff must allege facts demonstrating that "the intention is material and the recipient has reason to believe that it will be carried out." Restatement (Second) of Torts § 544 (1977). Applying these standards to SFC's Complaint, the Court concludes that SFC has adequately pled

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5

Not Reported in F.Supp.2d, 2004 WL 609329 (D.Del.)

**(Cite as: 2004 WL 609329 (D.Del.))**

justifiable reliance in order to survive dismissal.

Royal directs the Court to *Debakey Corp. v. Raytheon Service Co .,* 2000 WL 1273317 (Del. Ch. Aug. 25, 2000), for support of its contention that SFC failed to adequately plead justifiable reliance. [FN5] In *Debakey,* the plaintiff sued for fraudulent inducement because of an oral promise by defendants that they would provide funding in excess of $2 million to the parties' joint venture. 2000 WL 1273317, at *22. A subsequent written contract, however, stated that the defendants had the right to unilaterally decide not to extend funding once the $2 million limit was reached. *Id.* Once the $2 million limit was reached, the defendants declined to extend the plaintiffs additional funding. *Id.*

> FN5. Royal does not contest that the statements at issue are material.

Following a bench trial, the *Debakey* court concluded that the written contract precluded the plaintiff from establishing justifiable reliance. *Id.* The court reasoned that reliance on the defendants' prior oral representations that they would provide funding in excess of $2 million when a subsequent express contract "unambiguously" permitted the defendants to terminate the joint venture "once the $2 million funding limit was reached" was unreasonable. *Id.*

The Court concludes that *Debakey* is both factually and procedurally distinguishable from the instant case. Here, unlike *Debakey,* there is no express contract that would make SFC's reliance on Royal's oral representations unjustifiable. Further, the *Debakey* court reached its conclusions after a bench trial and post-trial briefing, clearly not subject to the liberal 12(b)(6) standard of review. When reviewing SFC's Complaint under the correct standard of review, the Court concludes that SFC has adequately pled justifiable reliance. As noted above, SFC alleges that Royal made two statements to it indicating Royal's intent to issue a new credit risk insurance policy. (D.I. 1 at ¶ 31, 33.) Further, SFC alleges that Royal made these two representations following Royal's public

announcement that it was exiting the credit risk insurance business (D.I. 1 at ¶ 29), thereby justifying SFC's belief that Royal would issue one more policy despite its announcement.

**\*5** Based on these allegations, the Court cannot conclude that SFC could prove no set of facts establishing justifiable reliance. *See Langford,* 235 F.3d at 47. Accordingly, the Court will deny Royal's Motion to Dismiss Counts I and II for failure to plead justifiable reliance.

3. *Damages*

The Court is not persuaded by Royal's contention that SFC has failed to plead damages as a result of Royal's allegedly fraudulent and negligent misrepresentations. In paragraph 36, SFC alleges that it borrowed over $12 million from Royal "that provided no benefit to SFC." (D.I.1.) Further, in paragraph 45, SFC alleges that based on Royal's misrepresentations, Royal continued to receive pecuniary benefits that it was not entitled to from SFC's business. *Id.* Based on these allegations, the Court concludes that SFC has pled damages that are a consequence of Royal's alleged misrepresentations and false statements.

4. *Duty To Speak*

Royal also contends that SFC has failed to state a claim of fraud or negligent misrepresentation because, to the extent SFC bases Counts I and II on material omissions by Royal, SFC has not alleged that Royal had a duty to speak. In Delaware, a duty to speak may arise from circumstances other than a fiduciary or confidential relationship. *See Matthews Office Designs, Inc. v. Taub Inv.,* 647 A.2d 382 (Del.1993) (relying on the Restatement (Second) of Torts § 551(2) (1976) for the circumstances in which a duty to speak may arise). In relevant part, the Restatement (Second) of Torts § 551 provides that a party to a business transaction has a duty to exercise reasonable care to disclose: 1) information known due to the existence of a confidential or fiduciary relationship; 2) information that if undisclosed will cause its partial statements of facts to be misleading; or 3) facts basic to the transaction

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 6

Not Reported in F.Supp.2d, 2004 WL 609329 (D.Del.)

**(Cite as: 2004 WL 609329 (D.Del.))**

"if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." *Id.; see also Mentis v. Delaware Am. Life Ins. Co.,* 1999 WL 744430 (Del.Super. July 28, 1999) (holding that a duty to speak may arise from a pre-existing relationship between the parties or from a partial disclosure of facts that requires further disclosure to prevent a misleading impression) (citations omitted).

Royal moves to dismiss Counts I and II only on the basis that SFC has not alleged the existence of a confidential or fiduciary relationship between the parties. Therefore, the Court will deny Royal's Motion because Royal has not established, under all the circumstances articulated by Section 551 of the Restatement (Second) of Torts, that SFC has failed to plead facts sufficient to establish a duty to speak.

*B. Count III, Breach Of The Duty Of Good Faith And Fair Dealing*

Royal contends that Count III of SFC's Complaint, breach of the duty of good faith and fair dealing, should be dismissed because there was no contract by which a covenant of good faith and fair dealing may be implied. In response, SFC contends that it has alleged facts sufficient to support its breach of the duty of good faith and fair dealing claim because the case Royal relies upon implied a covenant of good faith and fair dealing before the execution of any written contract. Further, SFC contends that part of its good faith and fair dealing claim involves actions that took place after the Notes were executed.

**\*6** Delaware courts recognize an implied covenant in contracts requiring the parties to act with good faith toward the other party with respect to their contract. *Katz v. Oak Indus. Inc.,* 508 A.2d 873, 880 (Del. Ch.1986) (citing Restatement (Second) of Contracts, § 205 (1981)). A party must "act reasonably to fulfill the intent of the parties to the agreement." *Gloucester Holding Corp. v. U.S. Tape & Sticky Prod., LLC,* 832 A.2d 116, 128 (Del.

Ch.2003) (quoting *Kelly v. McKesson HBOC, Inc.,* 2002 WL 88939 at * 10 (Del.Super.Jan. 16, 2002)). Applying these principles to the allegations in SFC's Complaint, the Court will grant Royal's Motion to Dismiss SFC's claim for breach of the duty of good faith and fair dealing.

SFC contends that it has sufficiently alleged a claim for breach of the duty of good faith and fair dealing because it alleged in its Complaint that "at the time the parties negotiated the Notes, SFC reasonably expected Royal to issue the new policy based on Royal's misrepresentations and omissions." (D.I. 14 at 21.) SFC alleges that its reasonable expectations are based upon Royal's representations to SFC's CEO that Royal would consider providing additional credit risk insurance for another securitization if SFC executed the Notes that Royal would use to make forbearance payments to Wells Fargo. (D.I. 1 at ¶ 33.) SFC further alleges that it executed the Notes requested by Royal, but that Royal never fulfilled its promise to issue a new credit risk insurance policy. *Id.* at ¶ 59-60.

The Court concludes that SFC's allegations are complaints about Royal's bad faith in bargaining or negotiation, and therefore, do not fall within the scope of the duty of good faith and fair dealing in contracts. *See* Restatement (Second) of Contracts § 205 comment (c) (1981). "The duty of good faith is ... not imposed on parties until they have reached agreement and does not bind them during their earlier negotiations." E. Allen Farnsworth, 2 *Farnsworth on Contracts* § 7.17 (2d ed.2001). SFC's allegations involve contract invalidating claims dealing with fraudulent inducement or fraud, not breach of the duty of good faith and fair dealing. Accordingly, the Court will grant Royal's Motion to Dismiss Count III of SFC's Complaint for failure to state a claim upon which relief may be granted on grounds of breach of the duty of good faith and fair dealing.

*C. Count IV. Unjust Enrichment*

Royal contends that Count IV, unjust enrichment, should be dismissed because payment of the loan

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 7

Not Reported in F.Supp.2d, 2004 WL 609329 (D.Del.)

**(Cite as: 2004 WL 609329 (D.Del.))**

proceeds was carried out as contemplated by the parties. Further, Royal contends that because unjust enrichment is a quasi-contract claim, it is not available when, as here, an express contract covers the same subject matter. SFC responds that it has sufficiently pled an action for unjust enrichment because actions for unjust enrichment are permitted when the validity of a contract is challenged, as in the instant case.

**\*7** "Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Total Care Physicians, P.A. v. O'Hara,* 798 A.2d 1043, 1056 (Del.Super.2001) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.,* 539 A.2d 1060, 1062 (Del.1988)). " 'The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." ' *Id.* (quoting *Jackson Nat'l Life Ins. Co. v. Kennedy,* 741 A.2d 377, 393 (Del. Ch.1993). Applying these principles to the facts alleged in SFC's Complaint, the Court concludes that SFC has adequately alleged facts in support of its unjust enrichment claim to survive Royal's Motion to Dismiss.

The Court is not persuaded by Royal's contention that SFC may not maintain a claim for unjust enrichment because the parties executed documents, i.e. the Notes, providing for payment to Wells Fargo. Although the Court agrees with the general contract principle cited by Royal, in this case, SFC alleges that the Notes should be rescinded because of fraudulent statements and omissions made by Royal. Therefore, accepting SFC's factual allegations, the Court concludes that SFC's unjust enrichment claim must survive the instant motion because if the Notes are rescinded due to fraudulent conduct or omissions, there is no valid contract that would preclude SFC's unjust enrichment theory.

Further, the Court rejects Royal's assertion that SFC has failed to allege that Royal received any unjust retention of a benefit. Royal contends that

because the parties specifically contemplated that the proceeds from the Notes would be paid to Wells Fargo, SFC cannot now complain of any unfairness that may have resulted from that agreement. SFC is not, however, merely complaining that Wells Fargo received the benefit of the proceeds of the Notes; instead, SFC asserts that Royal was unjustly enriched because Royal induced SFC to act by making promises Royal never intended to keep. Accordingly, the Court will deny Royal's Motion to Dismiss Count IV.

*D. Counts V. Rescission, and VI, Declaratory Judgment*

Royal contends that Counts V, rescission, and VI, declaratory judgment, should be dismissed because these claims are based upon previous paragraphs in the Complaint that are defective for reasons it stated with respect to Counts I-IV. The Court disagrees.

Delaware law recognizes fraudulent inducement as one means by which a party may rescind an agreement. *Norton v. Poplos,* 443 A.2d 1, 4 (Del.1982). The elements of fraudulent inducement are 1) a false statement or misrepresentation; 2) that the defendant knew was false or made with reckless indifference to the truth; 3) the statement induced the plaintiff to enter the agreement; 4) the plaintiff's reliance was reasonable; and 5) the plaintiff was injured as a result. *Lord v. Souder,* 748 A.2d 393, 402 (Del.2000) (citing *Stephenson,* 462 A.2d at 1074.

**\*8** The Court concludes that SFC has alleged facts sufficient to support its claim for rescission due to fraudulent inducement. In its Complaint, SFC alleges that Royal knew that representations and omissions it made to SFC were false, that it acted reasonably in reliance on these representations, and that it was injured. (D.I. 1 at ¶ 30-36.) These allegations support a claim for rescission due to fraudulent inducement. [FN6]

> FN6. As noted above, the Court has concluded that SFC's Complaint, for the purposes of the Rule 12(b)(6) Motion, alleges a material fact, justifiable reliance,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 8

Not Reported in F.Supp.2d, 2004 WL 609329 (D.Del.)

**(Cite as: 2004 WL 609329 (D.Del.))**

and the damages elements of an action for fraud.

The Court also concludes that SFC has alleged facts sufficient to support its declaratory judgment claim. Count VI of SFC's Complaint asserts that SFC is entitled to a declaratory judgment that the Notes are null and void because it was fraudulently induced into their execution. As the Court has concluded, SFC has alleged facts adequate to support a claim for fraudulent inducement, and therefore, the Court will deny Royal's Motion to Dismiss Count VI of SFC's Complaint.

CONCLUSION

For the reasons discussed, the Court concludes that Counts I and II of SFC's Complaint do not satisfy Rule 9(b)'s pleading requirements, and therefore, must be dismissed. Further, the Court concludes that Count III of SFC's Complaint must be dismissed pursuant to Rule 12(b)(6). The Court also concludes that Counts I, II, and IV-VI state a claim for which relief may be granted.

An Order consistent with this Opinion will be entered.

*ORDER*

At Wilmington, this 23rd day of March, 2004, for the reasons discussed in the Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that:

1) Royal Indemnity Co.'s ("Royal") Motion to Dismiss (D.I.6) Counts I and II of Student Finance Corporation's ("SFC") Complaint pursuant to Rule 9(b) is *GRANTED;*
2) Royal's Motion to Dismiss (D.I.6), pursuant to Rule 12(b)(6), with respect to:
a) Count III of SFC's Complaint is *GRANTED;*
b) Counts I, II, IV-VI of SFC's Complaint is *DENIED.*
3) SFC shall file an Amended Complaint within twenty (20) days of this Order.

Not Reported in F.Supp.2d, 2004 WL 609329 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 318934 (Trial Pleading) Amended Complaint (Jan. 23, 2006)

• 1:03CV00507 (Docket) (May. 23, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

G.L. WILLIAMS ASSOCIATES, INC.;      )
RT TECHNOLOGY, LLC.; and WEST        )
COAST REPS, INC.,                    )
                     Plaintiffs,     )
                                     )
              v.                     )    C.A. No. 06-cv-00114-SLR
                                     )
MOTOROLA, INC., a Delaware           )
corporation.                         )
                     Defendant.      )

## CERTIFICATE OF SERVICE

I, William W. Bowser, Esquire, hereby certify that on this 10th day of

April 2006, I caused to be served a true and correct copy of the foregoing **Brief of**

**Defendant Motorola, Inc. In Support Of Its Motion To Dismiss Or, In The**

**Alternative, Motion For More Definite Statement and Exhibits** upon the following

counsel of record via hand delivery:

> David Allan Felice
> Cozen & O'Connor
> Chase Manhattan Centre, 1201 N. Market, Ste 1400
> Wilmington, DE 19801

I further certify that on this 10th day of April 2006, I caused to be mailed

by United States Postal Service two true and correct copies of the foregoing **Brief of**

**Defendant Motorola, Inc. In Support Of Its Motion To Dismiss Or, In The**

**Alternative, Motion For More Definite Statement and Exhibits** upon the following

counsel of record:

> Kevin F. Barry
> Cozen & O'Connor
> 1900 Market Street
> Philadelphia, PA 19103

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> /s/ William W. Bowser
> ———————————————————————
> William W. Bowser, Esquire (Bar I.D. 2239)
> 1000 West Street
> Wilmington, Delaware 19801
> Telephone: (302) 571-6601; Facsimile: (302) 576-3282
> Email: wbowser@ycst.com