IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

G.L. WILLIAMS ASSOCIATES, INC.;           :
RT TECHNOLOGY, LLC; and                   :
WEST COAST REPS, INC.,                    :
                                          :
            Plaintiffs,                    :        C.A. No. 06-114-SLR
                                          :
      v.                                   :        JURY TRIAL DEMANDED
                                          :
MOTOROLA, INC.,                           :
                                          :
            Defendant.                     :


**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (COUNTS III, V AND VI) OR, IN THE ALTERNATIVE,
MOTION FOR A MORE DEFINITE STATEMENT**


Dated:  May 17, 2006                      Sean J. Bellew (#4072)
                                          David A. Felice (#4090)
                                          Cozen O'Connor
                                          1201 North Market Street, Suite 1400
                                          Wilmington, DE  19801
Of Counsel:                               Telephone:  (302) 295-2000
Kevin F. Berry                            Facsimile:  (302) 295-2013
Cozen O'Connor                               *Attorneys for Plaintiffs*
1900 Market Street
Philadelphia, PA  19103
Telephone:  (215) 665-2000
Facsimile:  (215) 665-2013

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ........................................................................ 1

SUMMARY OF ARGUMENT .............................................................................................. 2

STATEMENT OF FACTS ..................................................................................................... 4

    A.    The Parties ............................................................................................................... 4

    B.    Motorola's Staffing Shortage and Deceptive Negotiations ...................................... 4

    C.    The Parties' Agreements ......................................................................................... 6

          1.    Agreement with West Coast Reps, Inc. ....................................................... 6

          2.    Agreement with RT Technologies, LLC ...................................................... 8

          3.    Agreement with G.L. Williams Associates, Inc. .......................................... 9

I.    ARIZONA LAW IS NOT CONTROLLING FOR PURPOSES OF THIS MOTION ......... 11

    A.    The Parties' Arizona Choice of Law Provision Only
          Applies to Contract Claims.................................................................................... 11

    B.    California, Maryland, New Jersey, Massachusetts or Delaware Law
          Applies to Plaintiffs' Tort Claims ......................................................................... 13

II.    PLAINTIFFS STATE COGNIZABLE CLAIMS FOR MOTOROLA'S DECEPTIVE
TRADE PRACTICES ......................................................................................................... 15

III.    PLAINTIFFS' COMPLAINT ALLEGES A FACTUAL PREDICT FOR NEGLIGENT
MISREPRESENTATION ................................................................................................... 16

    A.    The Complaint Alleges Actionable Misrepresentations ........................................ 16

    B.    The Economic Loss Doctrine is Inapplicable ....................................................... 18

IV.    PLAINTIFFS ARE PERMITTED TO SEEK EXEMPLARY DAMAGES FOR THEIR
EXTRA-CONTRACTUAL CLAIMS................................................................................ 19

V.    PLAINTIFFS EXCEEDED THE REQUIREMENT OF PLEADING FRAUD WITH
PARTICULARITY ............................................................................................................ 20

CONCLUSION ..................................................................................................................... 23

WILMINGTON\34730\1153371.000

# TABLE OF AUTHORITIES

## CASES

*Apollo Group, Inc. v. Avnet, Inc.,*
58 F.3d 477 (9th Cir. 1995) ...................................................................................... 19

*Automated Salvage Transport, Inc. v. NV Koninklijke KNP BT,*
106 F. Supp. 2d 606 (D.N.J. 1999) ........................................................................... 17

*Brown v. SAP America, Inc.,*
1999 WL 803888 (D. Del. Sept. 13, 1999) .......................................................... 12, 21

*Burnett v. Ghassem Vakili, M.D., P.A.,*
685 F. Supp. 430 (D. Del. 1988) .............................................................................. 13

*Carstens v. City of Phoenix,*
75 P.3d 1081 (Ariz. App. 2003) ............................................................................... 19

*Computerized Radiological Services, Inc. v. Syntex Corp.,*
595 F. Supp. 1495 (E.D.N.Y. 1984), *rev'd in part on other grounds*
786 F.2d 72 (2d Cir. 1986) ...................................................................................... 12

*Dixon v. City of Phoenix*
845 P.2d 1107 (Ariz. App. 1992) .............................................................................. 20

*Furniture Consultants, Inc. v. Datatel Minicomputer Co.,*
1986 WL. 7792 (S.D.N.Y. July 10, 1986) ................................................................ 12

*J-Squared Tech, Inc. v. Motorola, Inc.,*
364 F. Supp. 2d 449 (D. Del. 2005) ................................................................. *passim*

*Lufty v. R.D. Roper & Sons Motor Co.,*
115 P.2d 161 (Ariz. 1941) ....................................................................................... 19

*Lum v. Bank of America,*
361 F.3d 217 (3d Cir. 2004) .................................................................................... 20

*Magpali v. Farmers Group, Inc.,*
48 Cal. App. 4th 471, 55 Cal. Rptr. 2d 225 (Cal. App. 2d Dist. 1996) ...................... 17

*McAlister v. Citibank (Arizona),*
829 P.2d 1253 (Ariz. App. 1992) ............................................................................. 17

*Menendez v. Paddock Pool Construction Co.,*
836 P.2d 968 (Ariz. App. 1991) .............................................................................. 11

*Naghiu v. Inter-Continental Hotels Group, Inc.,*
    165 F.R.D. 413 (D. Del. 1996) ..................................................................................12

*Rawlings v. Apodaca,*
    726 P.2d 565 (Ariz. 1986) ........................................................................................20

*Samuelson v. Susen,*
    576 F.2d 546 (3d Cir. 1978) .....................................................................................13

*Sargent v. Tenaska, Inc.,*
    914 F. Supp. 722 (D. Mass. 1996).............................................................................17

*Seville Industrial Machine Corp. v. Southmost Machine Corp.,*
    742 F.2d 786 (3d Cir. 1984) ...............................................................................20, 21

*Sheehan v. Little Switzerland, Inc.,*
    136 F. Supp. 2d 301 (D. Del. 2001) ..........................................................................11

*Spudnuts, Inc. v. Lane,*
    641 P.2d 912 (Ariz. App. 1982) ................................................................................21

*St. Joseph's Hospital and Medical Center v. Reserve Life Insurance Co.,*
    742 P.2d 808 (Ariz. 1987) ........................................................................................18

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.,*
    971 F.2d 401 (9th Cir. 1992) ....................................................................................12

*Travel Committee, Inc. v. Pan American World Airways, Inc.,*
    603 A.2d 1301 (Md. App. 1992) ...............................................................................17

*Travelers Indemnity Co. v. Lake,*
    594 A.2d 38 (Del. 1991)......................................................................................12, 13

*Trump Hotels and Casino Resorts, Inc. v. Mirage Resorts, Inc.,*
    140 F.3d 478 (3d Cir. 1998) .....................................................................................11

*Union Oil Co. of Cal. v. John Brown E & C,*
    1994 WL 535108 (N.D. Ill. Sept. 30, 1994)..............................................................12

*Wagner v. Rao,*
    885 P.2d 174177 (Ariz. 1994) ..................................................................................19

**STATUTES**

*Cal. Bus. & Prof. Code* § 17200, *et seq*..........................................................................15

WILMINGTON\34789\1099997.000

*Del. C.* § 2532 *et seq*........................................................................................................... 15

*Md. Code Com. Law* § 13-301........................................................................................... 15

*N.J. Stat.* 56:8-2 .............................................................................................................. 15

WILMINGTON\34789\1099997.000

## NATURE AND STAGE OF PROCEEDINGS

On February 22, 2006, Plaintiffs G.L. Williams Associates, Inc. ("GLW"), RT Technology, LLC ("RTT") and West Coast Reps, Inc. ("WCR") filed their complaint (the "Complaint") against defendant Motorola, Inc. ("Motorola") (D.I. 1). The Complaint seeks compensatory and punitive damages resulting from Motorola's unlawful and improper conduct in negotiating and purportedly terminating manufacturer's representative agreements ("MRA") with Plaintiffs and all other manufacturer's representatives. The Complaint sets forth six causes of action: (i) breach of contract; (ii) promissory estoppel; (iii) negligent misrepresentation; (iv) breach of the implied covenant of good faith and fair dealing; (v) fraud; and (vi) deceptive trade practices.

On April 10, 2006, Motorola moved to dismiss Counts III, V and VI for failure to state a claim, or in the alternative, for a more definite statement (D.I. 5). Motorola filed its opening brief in support of its motion to dismiss or, in the alternative, motion for a more definite statement on April 10, 2006. (D.I. 6) (hereinafter "O.B. at p. __"). Specifically, Motorola seeks to dismiss Plaintiffs' deceptive trade practices, negligent misrepresentation and claim for punitive damages based on failure to state a claim (Counts III and VI). (O.B. at pp. 8-13). Motorola seeks to dismiss Plaintiffs' fraud claim based on failure to plead with particularity under Fed. R. Civ. P. 9(b). (O.B. at pp. 14-17). Finally, Motorola seeks to dismiss GLW's breach of contract claim based on a failure to disclose its April 2003 moratorium on the execution of any additional MRAs. (O.B. at p. 17).

On April 24, 2006, Plaintiffs filed their motion to consolidate this action with a companion action styled: *J-Squared Tech., Inc. v. Motorola, Inc.*, C.A. No. 04-960-SLR (D.I. 7). On May 11, 2006 Motorola filed its response in opposition to Plaintiffs' motion to consolidate (D.I. 10).

WILMINGTON\34730\1153371.000

This is Plaintiffs' answering brief in opposition to Motorola's motion to dismiss or, in the alternative, motion for a more definite statement.

## SUMMARY OF ARGUMENT[1]

Plaintiffs allege cognizable claims for deceptive trade practices and negligent misrepresentation in spite of Motorola's efforts to mischaracterize or reargue this Court's holding in the companion *J-Squared* action. This Court recognized in *J-Squared* that allegations concerning Motorola's false or misleading representations as to its intent of maintaining a long-term relationship properly stated a claim for negligent misrepresentation. *J-Squared Tech, Inc. v. Motorola, Inc.*, 364 F. Supp. 2d 449, 453 (D. Del. 2005). While *J-Squared* held that the Agreements were not covered by Arizona's Consumer Fraud Act, *J-Squared*, 364 F. Supp. 2d at 452, here Plaintiffs do not assert a claim under Arizona's Consumer Fraud Act, instead, seeking relief for Motorola's deceptive trade practices under applicable state statutory law. While the Court applied Arizona law, *sua sponte*, in *J-Squared*, a contractual choice of law is not controlling with respect to tort based claims between contracting parties. As a result, the Court may look to California, Maryland, New Jersey, Massachusetts and Delaware law to ascertain Plaintiffs' claims for deceptive trade practices.

Motorola's claim that Plaintiffs may not recover punitive damages for fraud, deceptive trade practices and willful breach of contract is misplaced. In *J-Squared*, the Court held that punitive damages were not available for breach of the implied covenant of good faith and fair dealing (a quasi contract claim) absent special circumstances. Established case law confirms that a contractual limitation of liability provision is not controlling as to intentional or other tort based claims.

---

[1] GLW concedes Motorola's argument addressing the April moratorium. Accordingly, that position of its breach of contract claim is withdrawn.

Plaintiffs satisfy the Rule 9 requirement of pleading fraud with specificity as they identify the date, place or time of the fraudulent representations and otherwise provide Motorola with sufficient notice of the precise misconduct with which they are charged. Accordingly, Motorola's motion to dismiss Plaintiffs' fraud claim based on failure to plead with specificity must be denied.

## STATEMENT OF FACTS

### A. The Parties

GLW is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business located in Haddonfield, New Jersey. (Cmpt. ¶ 2). GLW's principal contacts and chief negotiators were Scott Williams and Mark Gernhardt. (Cmpt. ¶ 49).

RTT is a limited liability company organized and existing under the laws of the State of Maryland with its principal place of business located in Rockville, Maryland. (Cmpt. ¶ 3). RTT primarily focused on the military and aerospace accounts for Motorola in and around Washington, DC. (Cmpt. ¶ 36). Joe Palermino was RTT's principal contact and chief negotiator. (*Id.*).

WCR is a corporation organized and existing under the laws of the State of California with its principal place of business located in La Habra, California. (Cmpt. ¶ 4). WCR's principal contacts and chief negotiators were Walter Reynolds, Elmo Pennard and Joe Dohn. (Cmpt. ¶ 22).

Motorola, through its division known as the Motorola Computer Group (referred to herein as "Motorola"), describes itself as the world's leading provider of embedded computing technology, serving original equipment manufacturers, primarily in the telecommunications in military/aerospace industries. (Cmpt. ¶ 9). Motorola was represented during the negotiations and performance under the Agreements by a number of employees, including: Paul Holt, Steve Cunha, Larry Terry, Marc Watts, Al Currano, Jim McGregor, Sue Hamlet, Julie Blair, Frank Rafie and Jay Liston. (Cmpt. ¶ 17).

### B. Motorola's Staffing Shortage and Deceptive Negotiations

Beginning in 2001, Motorola experienced a substantial decrease in revenue resulting from the burst of the dot com bubble. (Cmpt. ¶ 11). As a result of this downturn, Motorola laid

off approximately two-thirds of its direct sales employees between 2000 and 2002. (Cmpt. ¶ 12). Following the layoffs, Motorola was left with less then (10) outside sales employees to cover all of North America. (Id.). As a result of the business downturn and substantial layoffs, Motorola had to re-engineer its business model, implementing an indirect sales model through which it would employ a number of manufacturer's representatives, including Plaintiffs. (Cmpt. ¶ 13).

Beginning sometime prior to May of 2002, Motorola began to approach a number of different manufacturer's representatives to fill the gap created by its layoffs and to service Motorola's present customer base and to continue to generate demand creation. (Cmpt. ¶ 14). Each and every perspective manufacturer's representative expressed one common concern when approached by Motorola and its purported new business model. The concern was whether this new business model was a solution that Motorola held for the long-term, such that the manufacturer representatives' up-front expenditures of capital and labor resources and lost opportunity cost would generate a stream of revenue sufficient to recoup costs and otherwise replace various opportunity costs known to the parties (e.g., termination or non-engagement of competing lines).[2] (Cmpt. ¶ 15). Indeed, WCR (through Walter Reynolds), RTT (through Joe Palermino) and GLW (through Scott Williams and Mark Gernhardt) made inquiry as to Motorola's intent to establish a long-term relationship with its prospective manufacturer's representatives. (Cmpt. ¶¶ 16, 22, 39 and 51).

Approximately halfway through its endeavors to sign up manufacturer's representatives to cover its North American operations, Motorola undertook internal discussions concerning the

---

[2] Plaintiffs' counsel possesses sworn deposition testimony from Paul Holt, Motorola's director of North American sales, that this statement is true and was a universal concern voiced by potential manufacturer representatives. (See also Cmpt. ¶ 66).

propriety of the manufacturer's representative business model and went so far as to place a moratorium on the execution of all additional manufacturer's representative agreements ("MRAs") as of April of 2003. (Cmpt. ¶ 19). Specifically, Kevin Parslow, Motorola's Director of Worldwide Sales, circulated a directive that all MRAs were to be placed on hold as of April 2003. (Cmpt. ¶ 68). Despite this directive from Mr. Parslow, Motorola executed the agreements with RTT and GLW and required WCR to continue to perform its obligations under its Agreement. (Cmpt. ¶¶ 20 and 70). Indeed, at Motorola's "kick-off" event for its manufacturer's representatives in Boston in September of 2003, Steve Machernis, Paul Holt and others represented to Plaintiffs that Motorola was continuing to develop the manufacturer's representative business model as a long-term solution and framework for the future. (Cmpt. ¶ 72). Had Plaintiffs been made aware of this information concerning the moratorium and Motorola's intent not to perform in the future, Plaintiffs would not have executed their agreements, they would not have disclosed their confidential and proprietary information to Motorola, nor would they have agreed to refrain from working on competitors' lines or incurred the expenses to further develop the Motorola product line with their customers. (Cmpt. ¶ 73).

## C. **The Parties' Agreements**

The negotiations between and amongst Plaintiffs and Motorola culminated in written contracts signed by the parties. Each contract contained substantially similar language and was based upon Motorola's form language for MRAs and what purported to be company policy embodied in Motorola's G-9 policy.

### 1. Agreement with West Coast Reps, Inc.

Beginning in June, 2002, Motorola approached WCR in an attempt to enter into an agreement whereby WCR would represent Motorola's interest for a number of different accounts as well as potential customer contacts in Hawaii and Nevada. Motorola employees Frank Rafie,

6

Jay Liston, Jim McGregor and Julie Blair discussed the manufacturer's representative opportunity with WCR employees Walter Reynolds, Elmo Pennard and Joe Dohn through telephone conversations and in-person meetings in June, August, September and November of 2002 and January and February of 2003. (Cmpt. ¶ 22).

During these discussions, Motorola informed WCR that WCR would have to terminate its existing manufacturer's representative agreement with General Microsystems ("GMS"), as GMS was a direct competitor of Motorola. (Cmpt. ¶ 23). Pursuant to Motorola's instructions, and based upon Motorola's representations that it maintained a long-term business model to employ its manufacturer's representatives, WCR canceled its agreement with GMS on or about September 15, 2002. (Cmpt. ¶ 24). Based on this termination, WCR was required to forfeit approximately $20,000 in commissions already earned through the GMS agreement. (*Id.*).

On February 24, 2003, WCR executed its MRA. On March 18, 2003, Motorola countersigned the MRA. (Cmpt. ¶¶ 26 and 29, and Exhibit A). WCR expended approximately $62,000 to implement its new manufacturer's representative commitments during the first eleven (11) months under the agreement. (Cmpt. ¶ 26). WCR also disclosed certain confidential and proprietary information to Motorola, including: (i) customer lists; (ii) WCR's customers' contact information and purchase history; and (iii) potential customer contacts within the territory covered by the agreement, including Hawaii and Nevada. (Cmpt. ¶ 30).

On February 26, 2004, Motorola delivered a letter to WCR stating that the agreement between it and WCR would expire on March 17, 2004. (Cmpt. ¶ 33 and Exhibit B). From its inception until the date Motorola alleged the agreement was to expire, WCR fully performed its obligations under the Agreement. (Cmpt. ¶ 34).

7

2. <u>Agreement with RT Technologies, LLC</u>

Beginning in July of 2002, Motorola began discussions with Joe Palermino while he was employed with DSPCon, Inc., through its unincorporated division, RT Technologies. In April and May of 2003, Al Currano, Jeanne Kolasa and Paul Holt represented to Joe Palermino that the manufacturer's representative business model was a long-term solution for Motorola. (Cmpt. ¶ 38). Indeed, during the negotiations leading up to the execution of the RTT Agreement, Al Currano instructed Mr. Palermino that he was required to hire one additional full-time employee upon execution of the Agreement and an additional full-time employee by the one-year anniversary of the Agreement. (Cmpt. ¶ 39). During the course of the agreement, Motorola interacted with RTT as a separate and distinct business entity from DSPCon. Indeed, a contract amendment was executed as of November 14, 2003 (following RTT's incorporation as a separate and distinct business entity) identifying RT Technologies as a separate entity. While Plaintiffs do not believe Motorola's proffer of its extrinsic evidence (offered for the truth matter asserted) is properly presented on a motion to dismiss, Plaintiffs present this contrary evidence not for the truth of the matter asserted, but rather for purposes of highlighting that Motorola interacted with RTT – through emails, telephone conversations and formal contract amendment – as a separate and distinct entity during the term of the Agreement. (Exhibit 1 (MOTJ02876)). This highlights the factual questions placed at issue concerning waiver, acquiescence or estoppel based on Motorola's conduct in this action.

Based on Motorola's representations and Motorola's understanding that Mr. Palermino would perform under the Agreement through RTT, the Agreement was executed on May 9, 2003. (Cmpt. ¶ 41). Thereafter, Motorola counter-signed the agreement on May 15, 2003. (Cmpt. ¶ 43 and Exhibit C). RTT expended approximately $80,000 to implement its new manufacturer's representative commitments for Motorola during the first eight (8) months under

8

the agreement. (Cmpt. ¶ 41). Additionally, RTT disclosed certain confidential and proprietary information to Motorola in furtherance of the joint undertaking, including: (i) customer lists; and (ii) RTT's customers' contact information and purchase history. (Cmpt. ¶ 44). Moreover, Joe Palermino terminated his formal relationship with DSPCon and began working exclusively with RTT. (*Id.*).

As with the termination of WCR, Motorola terminated RTT's agreement on February 26, 2004. Motorola's purported bases for the termination were a failure to meet performance standards and a breach of the non-assignment provision. (Cmpt. ¶ 45, and Exhibit D).

### 3.  Agreement with G.L. Williams Associates, Inc.

Beginning in October of 2002, Motorola approached Scott Williams and Mark Gernhardt of GLW in an effort to entice the company to become a manufacturer's representative. Following six (6) months of discussions, GLW initially turned down Motorola because it had a manufacturer's representative agreement with SBS Technologies ("SBS"), a company that directly competed with Motorola. (Cmpt. ¶ 49). Under the agreement with SBS, GLW earned over $200,000 per year in commissions. (Cmpt. ¶ 50). GLW relayed this commission figure to Motorola as an explanation for not wanting to move forward with the negotiation process. (*Id.*). Motorola again returned in May of 2003 and attempted to persuade GLW to become a manufacturer's representative for Motorola. Steve Cunha personally visited the GLW main office to reassure GLW of Motorola's efforts in pursuit of a long-term sales model using manufacturer's representatives. (Cmpt. ¶ 51). Mr. Cunha initiated a conference call with Paul Holt to reiterate that Motorola was committed to a long-term relationship with its manufacturer's representatives and to assure GLW that signing on with Motorola would return commissions meeting or exceeding the SPS commissions of approximately $200,000 per year. (*Id.*).

9

Based upon these representations, GLW executed its agreement in May of 2003. Motorola counter-signed the Agreement on June 3, 2003. (Cmpt. ¶ 52, and Exhibit E). GLW expended approximately $150,000 to implement its new manufacturer's representative commitments during the first seven (7) months under the Agreement. The two (2) principal sales engineers at GLW spent 75% - 80% of their time supporting Motorola's sales efforts in an attempt to recover the loss of revenue from SBS. (Cmpt. ¶ 53). Within three (3) months of terminating SBS, GLW realized that Motorola's total sales in the GLW territory (Delaware, New Jersey, Pennsylvania and the New York metro area) were less than one-quarter of sales of SBS. (Cmpt. ¶ 54). In addition to the lost opportunity cost, GLW disclosed certain confidential and proprietary information to Motorola in reliance on the misrepresentations. The disclosures included: (i) customer lists; (ii) GLW's customers' contact information and purchase history; and (iii) key program and territory knowledge. (Cmpt. ¶ 55).

Just as with RTT, on February 26, 2004, Motorola terminated the GLW agreement for purported performance issues. (Cmpt. ¶ 56, and Exhibit F).

WILMINGTON\34730\1153371.000

## ARGUMENT

For the purposes of Motorola's motion to dismiss, Motorola must "assume the truth of the allegations in the Complaint." *Menendez v. Paddock Pool Construction Co.*, 836 P.2d 968, 971 (Ariz. App. Ct. 1991). Moreover, the Court must construe the Complaint in favor of Plaintiffs. *Sheehan v. Little Switzerland, Inc.*, 136 F. Supp. 2d 301, 309 (D. Del. 2001) (citing *Trump Hotels and Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998)). Motorola bears the burden of persuasion to establish that Plaintiffs could not demonstrate any set of facts that would entitle them to relief. *Sheehan*, 136 F. Supp. 2d at 309 (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Menendez*, 836 P.2d at 971 (noting that a motion to dismiss will only be granted where "[p]laintiffs would not be entitled to relief under any facts susceptible of proof in the stated claim"). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Trump Hotels*, 140 F.3d at 483.

## I.    ARIZONA LAW IS NOT CONTROLLING FOR PURPOSES OF THIS MOTION

### A.    The Parties' Arizona Choice of Law Provision Only Applies to Contract Claims

Arizona law is not applicable to Plaintiffs' tort claims as the parties' contractual choice of law provision only applies to contact-based claims. Motorola claims that the Agreements' Arizona choice of law provision and the Court's *sua sponte* analysis[3] of the choice of law issue in *J-Squared* is binding on parties not subject to the *J-Squared* decision. (O.B. at p.8). As identified below, Motorola's argument lands wide of the mark given the difference in parties

---

[3] Anticipating that a choice of law issue surrounding the *J-Squared* Plaintiffs' tort claims might arise, the Court, *sua sponte*, determined that it would apply the parties' contractual choice of law of Arizona law to the negligent misrepresentation claim to ensure uniform adjudication of Plaintiffs' claims. *J-Squared Tech. Inc.*, 364 F. Supp. 2d at 452 n.8.

between this action and the *J-Squared* action and the lack of equivalence in the causes of action presented in Plaintiffs' Complaint.

As a general proposition, "courts have recognized that a contract's choice of law provision does not necessarily govern fraud, misrepresentation and other tort claims related to the [underlying] contract." *Brown v. SAP America, Inc.*, 1999 WL 803888, at *5 (Robinson, J.) (D. Del. Sept. 13, 1999) (citing *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (explaining that, "[c]laims arising in tort are not ordinarily controlled by a contractual choice of law provision"); *Union Oil Co. of Cal. v. John Brown E & C*, 1994 WL 535108, at *2-3 (N.D. Ill. Sept. 30, 1994) (applying Illinois law to tort claims in spite of contract's California choice of law provision); *Furniture Consultants, Inc. v. Datatel Minicomputer Co.*, 1986 WL 7792, at *2 (S.D.N.Y. July 10, 1986) (applying New York law to negligence and fraud claims arising out of contract governed by Maryland law, where the alleged negligence and fraud occurred in New York); *Computerized Radiological Servs., Inc. v. Syntex Corp.*, 595 F. Supp. 1495, 1503 (E.D.N.Y. 1984) (noting that, despite a contract's choice of law provision, "a tort claim arising out of the contract may be governed by the law of a different forum"), *rev'd in part on other grounds*, 786 F.2d 72 (2d Cir. 1986)). Indeed, in *Naghiu v. Inter-Continental Hotels Group, Inc.*, this Court adopted the Delaware Supreme Court's process of applying different choice of law rules with respect to claims sounding in contract and those sounding tort – known as dépeçage. *Naghiu*, 165 F.R.D. 413, 421-22 & n.4 (D. Del. 1996) (citing *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 41, 47 (Del. 1991)). Accordingly, the Court must engaged in traditional choice of law analysis to determine the controlling state law that will apply to each Plaintiff's tort claims.

**B.    California, Maryland, New Jersey, Massachusetts or Delaware Law Applies to Plaintiffs' Tort Claims**

A federal court sitting in diversity will apply the forum state's choice of law provisions when assessing matters of substantive law. *Burnett v. Ghassem Vakili, M.D., P.A.*, 685 F. Supp. 430, 431 (D. Del. 1988) (citing *Samuelson v. Susen*, 576 F.2d 546, 549 (3d Cir. 1978)). Delaware courts look to the Restatement (Second) of Conflict of Laws for guidance in choice of law disputes. Given an action in tort, Delaware state courts look at the following factors: (i) the place where the injury occurred; (ii) the place where the conduct causing the injury occurred; (iii) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (iv) the place where the relationship, if any, between the parties is centered. *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991) (citing Restatement (Second) of Conflicts § 145).[4]

GLW's tort claims should be controlled by either New Jersey, Massachusetts or Delaware law. GLW suffered injury at its principal place of business in New Jersey. (Cmpt. ¶ 2). Motorola's tortious conduct occurred in a number of places, including New Jersey and Massachusetts. (Cmpt. ¶ 51) (noting that Motorola employee Steve Cunha personally visited GLW in New Jersey in May 2004 and made representations with Paul Holt as to Motorola's long-term intentions); (Cmpt. ¶ 72) (Motorola's September 2003 "kick-off" event in Boston). GLW is a New Jersey corporation and has its principal place of business in New Jersey. (Cmpt. ¶ 2). Motorola is a Delaware corporation and transacts business around the world. (Cmpt. 5). The territory covered by the GLW Agreement encompassed Delaware, New Jersey, Pennsylvania, and New York-Metro area. (Cmpt. Ex. A at ex. 2). Accordingly, New Jersey, Massachusetts or Delaware law controls.

---

[4] Given the multitude of potentially applicable state law, the Court could choose to apply the law of the forum state – Delaware – the state of incorporation for Motorola and the state covered under GLW's territory assignment.

13

RTT's tort claims should be controlled by either Maryland, Massachusetts or Delaware law.   RTT suffered injury at its principal place of business in Maryland.   (Cmpt. ¶ 3). Motorola's tortious conduct occurred in a number of places, including Maryland and Massachusetts.   (*See* Cmpt. ¶ 38) (noting that Motorola employees Al Currano, Jeanne Kolasa and Paul Holt represented that the manufacturer's representative business model was a long-term solution for Motorola); (Cmpt. ¶ 72) (Motorola's September 2003 "kick-off" event in Boston). RTT is a Maryland limited liability company and has its principal place of business in Maryland. (Cmpt. ¶ 3).   Motorola is a Delaware corporation and transacts business around the world. (Cmpt. 5).  The territory covered by the GLW Agreement encompassed Maryland, Virginia and the District of Columbia.   (Cmpt. Ex. C at ex. 2).   Accordingly, Maryland, Massachusetts or Delaware law controls.

WCR's tort claims should be controlled by either California, Massachusetts or Delaware law.   WCR suffered injury at its principal place of business in California.   (Cmpt. ¶ 4). Motorola's tortious conduct occurred in a number of places, including California and Massachusetts.   (Cmpt. ¶ 22) (noting that Motorola employees Frank Rafie, Jay Liston, Jim McGregor and Julie Blair represented that the manufacturer's representative business model was a long-term solution for Motorola); (Cmpt. ¶ 72) (Motorola's September 2003 "kick-off" event in Boston).  WCR is a California corporation and has its principal place of business in California. (Cmpt. ¶ 4).   Motorola is a Delaware corporation and transacts business throughout the world. (Cmpt. 5).    The territory covered by the WCR Agreement encompassed certain parts of California, Hawaii and Nevada (*See* Cmpt. ¶ 30 and Ex. E at ex. 2).   Accordingly, California, Massachusetts or Delaware law controls.

WILMINGTON\34730\1153371.000

## II.    PLAINTIFFS    STATE    COGNIZABLE    CLAIMS    FOR    MOTOROLA'S DECEPTIVE TRADE PRACTICES

Plaintiffs' deceptive trade practices claim is valid under Delaware, California, Maryland, New Jersey or Massachusetts law.  Motorola claims that Plaintiffs' deceptive trade practices claim was already dismissed by the Court in the *J-Squared* litigation where statutory claims under Arizona's Consumer Fraud Statute were presented.  (O.B. at p. 8).  Given the application of competent state law as well as a recognition of the difference in the substance between Arizona's Consumer Fraud Statute and a claim for deceptive trade practices, Plaintiffs have alleged a cognizable factual basis for their deceptive trade practices claim.[5]

As described above, California, Massachusetts and Delaware law are applicable to WCR's deceptive trade practices claim.  Under applicable law, the facts alleged in support of Plaintiffs' Complaint establish a predicate for a deceptive trade practices claim.  *See Cal. Bus. & Prof. Code* § 17200, *et seq.*; 6 *Del. C.* § 2532 *et seq.*; M.G.L.A. 93A §§ 2, 11.

The same holds true for GLW and RTT.  Under Maryland and New Jersey law, GLW and RTT alleged a sufficient factual predicate for a deceptive trade practices claim.  *N.J. Stat.* 56:8-2; *Md. Code Com. Law* § 13-301.  Given Motorola's misrepresentations at the September 2003 "kick-off" meeting in Boston, Motorola's state of incorporation and the Court's prerogative to apply the law of the forum state, Massachusetts and Delaware law is also potentially applicable. Accordingly, Plaintiffs may assert their deceptive trade practices claims under Massachusetts, Delaware, California, New Jersey or Maryland law.

---

[5] To the extent the Court chooses to apply Arizona law to Plaintiffs' deceptive trade practices claim, Plaintiffs will agree to be bound by the Court's decision in *J-Squared*.  However, Plaintiffs adopt the same arguments set forth in *J-Squared* for purposes of any possible subsequent review.

15

### III.    PLAINTIFFS' COMPLAINT ALLEGES A FACTUAL PREDICT FOR NEGLIGENT MISREPRESENTATION

Motorola's false or reckless representations establish a basis for a claim of negligent misrepresentation. Motorola argues that this claim is barred: (i) as a matter of fact because its misrepresentations were not misrepresentations of fact and (ii) as a matter of law given an application of the economic loss doctrine. (O.B. at pp. 10-13). As described below, Plaintiffs' Complaint alleges misstatements of fact and misstatements of intent to perform in the future, both sufficient to establish claims for negligent misrepresentation. Moreover, Motorola's attempt to relitigate an adverse decision from this Court (following full briefing) is misplaced and is nonetheless still an incorrect interpretation of the law.

### A.    The Complaint Alleges Actionable Misrepresentations

Plaintiffs advance sufficient facts to establish a claim for negligent misrepresentation through at least three different scenarios. First, statements addressing the unequivocal expression of the duration of a business relationship are indeed statements of fact. Second, Motorola's misrepresentations concerning the revenue present within the territories (and, accordingly, the commissions paid) were false or made with reckless indifference as to the truth. Finally, even if Motorola's expressions of a long-term business model were expressions of future events, if those expressions were made without the present intent to perform (which Plaintiffs allege in their Complaint), then there is an actionable claim for misrepresentation.

Unequivocal statements as to the existence of a long-term business model are misstatements of fact when the facts alleged and the course of dealing demonstrate that those representations were false. Here, Motorola represented to each Plaintiff, separately and at joint meetings, that the manufacturer's representative business model was a long-term business model. (Cmpt. ¶¶ 22, 38, 49 and 51). Moreover, Motorola confirmed these misstatements at its September 2003 "kick-off" event for the manufacturer's representatives in Boston, when Steve

16

Machernis, Paul Holt and others represented to Plaintiffs that Motorola was continuing to develop the manufacturer's representative business model as a long-term solution and framework for the future. (Cmpt. ¶ 72). Regardless of whether the MRAs were expressly limited to a one-year term, renewable each year or expressly designated multi-year Agreements, the facts alleged demonstrate that Motorola did not possess the intent to honor its obligations under the Agreements even for year one.

Motorola also represented that the historical revenue figures for the assigned territories were sufficient to drive commissions at or above commissions Plaintiffs were forced to forgo when they executed the MRAs. (*See* Cmpt. ¶¶ 26, 31, 39, 51). It turns out that Motorola's portrayal of the revenue figures were false or made with the reckless disregard for the truth as the actual revenue (and commissions earned) were significantly less than those represented.

Even if Motorola statements were expressions of future events, those representations may still serve as a basis to establish a misrepresentation claim if Motorola did not have the present intent to perform. *See, e.g., Magpali v. Farmers Group, Inc.*, 48 Cal. App. 4th 471, 481, 55 Cal. Rptr. 2d 225, 231 (Cal. App. 2d Dist. 1996) (recognizing that a promise of future conduct is actionable if made without a present intent to perform); *McAlister v. Citibank (Arizona)*, 829 P.2d 1253, 1260 (Ariz. App. 1992) (recognizing that fraud may be based on unfulfilled promises or expressions concerning future events if statements regarding those events were made with the present into not to perform); *Travel Committee, Inc. v. Pan American World Airways, Inc.*, 603 A.2d 1301, 1328-29 (Md. App. 1992) (same); *Automated Salvage Transport, Inc. v. NV Koninklijke KNP BT*, 106 F. Supp. 2d 606, 623 (D.N.J. 1999) (same, applying New Jersey law); *Sargent v. Tenaska, Inc.*, 914 F. Supp. 722, 730 (D. Mass. 1996) (same, applying Massachusetts law); *J-Squared Tech. Inc.*, 364 F. Supp. 2d at 453.

WILMINGTON\34730\1153371.000

Plaintiffs allege that by January 2003 or as late as April 2003, Motorola no longer intended to utilize the manufacturer's representative business model as its long-term business model. (Cmpt. ¶¶ 67-70). In particular, Motorola devised specific performance standards in January 2003 where once there were none. (Cmpt. ¶ 67). These same performance standards were used as a pretext to terminate a majority of Motorola's manufacturer's representatives on February 26, 2004. Moreover, Motorola's Director a Worldwide Sales delivered a directive to his staff in April 2003 that no additional MRAs were to be executed. Despite this directive, Motorola executed additional MRAs with RTT and GLW and reaffirmed its commitment to a long-term business relationship with all three Plaintiffs at the September 2003 "kick-off" meeting in Boston. (Cmpt. ¶ 72). Accordingly, Plaintiffs alleged a cognizable basis to suspect that Motorola did not possess the present intent to perform when it undertook to make its representations.

**B.    The Economic Loss Doctrine is Inapplicable**

Motorola attempts a second bite at the apple on the issue of the economic loss doctrine. Asserting the very same cases and the very same arguments this Court overruled in *J-Squared*, Motorola argues the most improbable of scenarios:  A plaintiff may only escape the economic loss doctrine when asserting a claim for negligent misrepresentation if the plaintiff suffered a physical injury. This tortured reasoning highlights the correctness of this Court's earlier decision on the issue.  Arizona's economic loss doctrine is limited to cases under the Uniform Commercial Code.

Arizona adopted the Restatement (Second) of Torts § 552 recognizing that a company "is subject to liability for pecuniary loss" if it supplies false information to others who justifiable rely on the false information. *St. Joseph's Hosp. and Medical Center v. Reserve Life Ins. Co.*, 742 P.2d 808, 813 (Ariz. 1987). Motorola's continued insistence that the economic loss doctrine applies outside the context of a sale of goods under the UCC and a construction liability action is

18

unavailing.  (O.B. at p. 12) (citing *Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477, 480 (9th Cir.

1995); *Carstens v. City of Phoenix*, 75 P.3d 1081 (Ariz. App. Ct. 2003)).   As this Court

recognized in *J-Squared*:

> Arizona recognizes the "economic loss" doctrine with respect to
> contracts for the sale of goods. . . . The agreement at issue in this
> case, however, is one for services, thus the UCC does not apply.
> Furthermore, plaintiffs' claims for negligent misrepresentation are
> not in conflict with the parties' contract. The contract states that it
> has a term of one year and can be renewed in writing upon
> agreement of the parties. Plaintiffs do not argue that defendant
> represented to them that the contract would last more than a year,
> but that defendant would agree to renew the contract when the year
> was up. Therefore, plaintiffs' claim would not be covered by the
> contact and they could not bring it in a contract action.

*J-Squared Tech. Inc.*, 364 F. Supp. 2d at 454.  Accordingly, Motorola's efforts to relitigate the

Court's decision regarding the economic loss doctrine and extend that doctrine to non-UCC

cases must be denied.

## IV.    PLAINTIFFS ARE PERMITTED TO SEEK EXEMPLARY DAMAGES FOR THEIR EXTRA-CONTRACTUAL CLAIMS

The limitation of liability provisions contained in the MRAs do not preclude the recovery

of exemplary damages stemming from intentional or willful conduct.  Motorola claims that the

MRA's sole remedy provision precludes Plaintiffs from even requesting the recovery of

exemplary damages.  (O.B. at p. 14).  As identified below, Motorola is not immune from an

award of exemplary damages merely because the parties sought to define the extent and amount

of contractual damages.

As a general proposition, "any provision in a contract making it possible for a party

thereto to free himself from the consequences of his own fraud in procuring its execution is

invalid and necessarily constitutes no defense." *Lufty v. R.D. Roper & Sons Motor Co.*, 115 P.2d

161, 166 (Ariz. 1941); *Wagner v. Rao*, 885 P.2d 174177 (Ariz. 1994) (quoting *Lufty*).  The

Arizona Supreme Court noted that when tort damages are recoverable, a plaintiff is not limited to

19

the economic damages within the contemplation of the parties at the time the contract was made. *Rawlings v. Apodaca*, 726 P.2d 565, 577 (Ariz. 1986). Indeed, in *Dixon v. City of Phoenix*, the decision cited by Motorola for the proposition that contractual choice of remedy provisions are generally binding on the parties, the court reasoned that a plaintiff was entitled to extra-contractual (right of entry agreement) damages for a defendant's negligence and trespass when the defendant damaged vegetation on the plaintiff's land. *See Dixon*, 845 P.2d 1107, 1117 (Ariz. App. 1992). So, Motorola's own authority recognizes that a plaintiff is not held to a damages estimate at the time of contracting when it seeks redress for tortious conduct. Accordingly, Motorola's efforts to present itself as being immune from a claim for exemplary damages must be denied.

## V.  PLAINTIFFS EXCEEDED THE REQUIREMENT OF PLEADING FRAUD WITH PARTICULARITY

Plaintiffs satisfy the Rule 9(b) pleading requirements for their fraud, negligent misrepresentation and deceptive trade practices claims. Motorola claims that Plaintiffs are "only feigning compliance with Rule 9(b)" and that despite the identification of the individual actors, the representations they made, to whom and when they were made, that Plaintiffs' efforts to "comply with [the Rule 9(b)] standard are illusory." (O.B. at p. 16). As demonstrated in Plaintiff's Complaint, there is more than ample factual allegations to place Motorola on notice of the precise misconduct with which it is charged.

In order to satisfy the pleading requirements set forth in Rule 9(b), Plaintiffs can either plead "the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Lum v. Bank of America*, 361 F.3d 217, 224 (3d Cir. 2004) (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)) (emphasis added). Courts will interpret Rule 9(b) liberally. *Brown v. SAP America, Inc.*, 1999 WL 803888, at *14 (Robinson, J.) (D. Del. Sept. 13, 1999).

WILMINGTON\34730\1153371.000

The purpose of Rule 9(b) is to permit the defendant to meaningfully respond to the complaint. *Id.* "Although no particular language is necessary in pleading fraud, the elements constituting fraud must be found <u>when considering the pleading as a whole</u>." *Spudnuts, Inc. v. Lane*, 641 P.2d 912, 914 (Ariz. App. Ct. 1982) (emphasis added).

In *Brown v. SAP America, Inc.*, this Court determined that a plaintiff satisfied Rule 9(b) by identifying the entity that made the alleged misrepresentations. *SAP*, 1999 WL 803888, at *14. The Court reasoned that the plaintiff was "not required to identify the specific author and receipt of each alleged misrepresentation." *Id.* (citing *S. Megga Telecomm. Ltd. v. Lucent Techs., Inc.*, 1997 WL 86413, at *7 (Robinson J.) (D. Del. Feb. 14, 1997)). The Court noted that the complaint identified when and where defendants made the alleged misrepresentation and therefore put the defendants "'on notice of the precise misconduct with which they are charged.'" *Id.* (quoting *Seville*, 742 F.2d at 791).

Here, not only did Plaintiffs identify the individual Motorola employees who made the false and deceptive representation, Plaintiffs also identified: (i) the substance of the misrepresentations; (ii) the timing of the misrepresentations and (iii) the method of communicating the misrepresentations. Specifically:

- "Motorola made representations to WCR (including Walter Reynolds, Elmo Pinard and Joe Dohn) that Motorola was engaging manufacturer representatives across North America and that this business model was a long-term solution for Motorola. Frank Rafie, Jay Liston, Jim McGregor, Julie Blair, and others made these representations. The discussions with the Motorola employees took place over the telephone and through in-person meetings in June, August, September and November of 2002 and January and February of 2003." (Cmpt. ¶ 22).

- "In April and May 2003, Al Currano, Jeanne Kolasa and Paul Holt presented [to RTT] that the manufacturer's representative business model was a long-term solution for Motorola." (Cmpt. ¶ 38).

- "Beginning in October of 2002, Motorola approached GLW (Scott Williams and Mark Gernhardt) in an effort to entice it to become a manufacturer's representative. . . . Motorola again returned in May of 2003 and attempted to convince GLW to become its manufacturer's representative. Steve Cunha personally visited the GLW main office to reassure GLW of Motorola's long-term

intentions.  Steve initiated a conference call with Paul Holt, Director of North American Sales, to reiterate that Motorola was committed to a long-term relationship with manufacturer's representatives and to assure GLW that signing on with Motorola would not be a risk relative to realized revenue for GLW." (Cmpt. ¶ 49, 51).

- "Motorola made a presentation during a 'kick-off' event for its manufacturer's representative in Boston, in September 2003.  At this presentation, Steve Machernis, Paul Holt and others represented to Plaintiffs that Motorola was continuing to develop the manufacturer's representative business model as a long-term solution and framework for the future." (Cmpt. ¶ 72).

Based on the allegations in the Complaint, Motorola has sufficient factual information to place it on notice of the misconduct with which it is charged.  Indeed, Motorola is actively litigating the *J-Squared* action, which is based on substantially similar facts and conduct and involves almost identical Motorola actors.  (*See* D.I. 7 (motion for consolidation)).  Moreover, Motorola (through the firm Lewis and Roca) was involved in and settled litigation or other disputes with every other manufacturer's representative involved in the business model.  For Motorola to suggest that it lacks a sufficient factual basis to defend this litigation is disingenuous.  For these reasons, Motorola's motion to dismiss predicated on Rule 9(b) must be denied.

WILMINGTON\34730\1153371.000

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Motorola's Motion to Dismiss or, in the alternative, Motion for a More Definite Statement be denied.


Dated:  May 17, 2006

_David A. Felice_

Sean J. Béllew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
*Attorneys for Plaintiffs*

Of Counsel:
Kevin F. Berry
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103
Telephone:  (215) 665-2000
Facsimile:  (215) 665-2013

23

# EXHIBIT 1

*Recd 14/2003*



**MOTOROLA**
Computer Group

November 14, 2003

**VIA FAX:**

RT Technologies Inc.
380 Foothill Road
Bridgewater, NJ 08807

RE:   **Manufacturer's Representative Agreement, executed by MCG as of May 15, 2003 ("Agreement"), Amendment One.**

Dear Mr. Palermino:

With your countersignature below, Motorola Computer Group (MCG) and RT Technologies Inc. hereby agree that the Agreement shall be amended such that Exhibit 2 - Territory, House Account, and Legacy Projects has been revised.

This amendment clarifies and defines the Motorola Legacy Project list by means of the insertion of Note 1 into Exhibit 2. The revised Exhibit 2 has been attached for your review and approval.

Please sign below indicating your agreement to the amendment of the Agreement. Once signed, please fax a fully executed copy to my attention at the below fax number.

If you should have any questions related to the subject matter of this letter, please contact me at the below number.

Very Truly Yours,

Acknowledged and Agreed: _____

Printed: __Alfred N Brower__

Title: __President__

David J. Bensted
Contract Manager
Motorola Computer Group

Date: __11-14-03__

T: (602) 438-3830
F: (602) 437-6246

MOTJ 02876

## CERTIFICATE OF SERVICE

I, David A. Felice, do hereby certify that on May 17, 2006, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing to the following counsel of record:

William W. Bowser
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Cory Talbot
Lewis and Roca LLP
40 N. Central Avenue
Phoenix, AZ  85004

David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
E-mail: dfelice@cozen.com

24

WILMINGTON\34730\1153371.000