IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J-SQUARED TECHNOLOGIES, INC., <br> J-SQUARED TECHNOLOGIES (OREGON) INC., <br><br> Plaintiffs, <br><br> v. <br><br> MOTOROLA, INC., <br><br> Defendant. | C.A. No. 04-960-SLR <br><br> JURY TRIAL DEMANDED |
| G.L. WILLIAMS ASSOCIATES, INC.; <br> RT TECHNOLOGY, LLC; and <br> WEST COAST REPS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MOTOROLA, INC., <br><br> Defendant. | C.A. No. 06-114-SLR <br><br> JURY TRIAL DEMANDED |

### PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO CONSOLIDATE

Plaintiffs J-Squared Technologies, Inc. ("JST"), J-Squared Technologies (Oregon), Inc. ("JSO"), G.L. Williams Associates, Inc. ("GLW"), RT Technology, LLC ("RTT") and West Coast Reps, Inc. ("WCR") (collectively, "Plaintiffs") submit this reply memorandum in further support of their motion to consolidate the two above-captioned actions. In support of their Motion, Plaintiffs state the following:

1. Consolidation of the two actions is appropriate because of the substantial savings of time and expense for both the Court and counsel afforded by a global resolution of the parties' disputes in one proceeding. Moreover, consolidation would work to decrease the burden placed on a number of witnesses common for both actions. Motorola's protestations as to delay, added

costs of discovery and prejudice are illusory as any alleged detriment Motorola may suffer given consolidation of the action styled: *J-Squared Technologies, Inc. v. Motorola, Inc.*, C.A. No. 04-960-SLR (the "J-Squared Action") will be more than equally offset by savings of time, expense and duplicative litigation in the companion action styled: *G.L. Williams Associates, Inc. v. Motorola, Inc.*, C.A. No. 06-114-SLR (the "GLW Action"). Accordingly, the two actions should be consolidated for all purposes, including trial.

A.   Complete Adjudication of the Parties' Disputes Would be Advanced

2.   Motorola claims that consolidation of the two actions would unnecessarily delay final resolution of the J-Squared Action. While a consolidation of the two actions may result in the short postponement of the September trial date in J-Squared, consolidation would hasten the adjudication of the GLW Action. As a result, consolidation would offer the parties and the Court an earlier, global resolution of the disputes presented in the two actions.

3.   Motorola fails to identify any prejudice it would suffer solely from the alleged postponement of the J-Squared Action. In reality, consolidation would eliminate the need for duplicitous written discovery, depositions and pre-trial submissions. The June 22, 2006 mediation would still proceed as scheduled, with the Magistrate Judge in a position to reach a global settlement. Moreover, a number of fact witnesses may not need to be recalled and even if they were recalled, the questioning would be focused on party-specific inquiries. Finally, the Court would not have to consider and decide duplicative pre-trial motions, such as evidentiary motions, *Daubert* motions and any disagreements over jury instructions and questionnaires.

4.   As a result, any potential delay in the adjudication of the J-Squared Action would be more than offset by the substantial gain in efficiency, clarity and consistency given a global resolution of the parties' disputes in one proceeding.

B.  The Parties will Save Substantial Time and Expense During Discovery in the GLW Action

5.  The parties will benefit from discovery common in both the J-Squared and GLW Actions. Again focusing on just the J-Squared Action, Motorola contends that "[u]nless plaintiffs have a time machine, the [discovery] argument is meritless." (Ans. Mem. at p. 6). While the fact discovery deadline in the J-Squared Action expired on April 3, 2006, the parties will have scheduled and taken two depositions outside this timeframe and the Court must still rule upon a comprehensive motion to compel certain document production and discovery responses from Motorola.

6.  Through its partial motion to dismiss the GLW Action, Motorola concedes (even if it is completely successful on its motion) that claims for: (i) breach of contract; (ii) promissory estoppel; (iii) breach of the implied covenant of good faith and fair dealing; and (iv) fraud will proceed through the discovery and pre-trial phases of litigation. Many of these claims will draw from the same witnesses and written discovery already completed in the J-Squared Action. Indeed, many of the issues presented in the J-Squared motion to compel implicate the production of company-wide analyses of the manufacturer's representative business model and profitability, amongst other requests. These factual issues are common to all Plaintiffs given Motorola's purported defenses to its unlawful termination of <u>all nine (9) manufacturer's representatives on the very same day</u> – February 26, 2004.

C.  Motorola's Claims of Prejudice are Grossly Exaggerated

7.  Certainly, Motorola will suffer prejudice if it were exposed to defending against five plaintiffs' claims for the unlawful and bad faith termination of their common agreements on the very same day. That's our job – the presentation of Plaintiffs' case-in-chief is intended to be prejudicial to Motorola. The touchstone is whether any detriment Motorola might suffer is

WILMINGTON\34855\1153371.000

unduly prejudicial. Given the fact that Motorola will have to present its defenses to these actions at one time or another, the answer is no.

8. Given Motorola's litigation tactics in both the J-Squared and GLW Actions, it is readily apparent that they concede the existence of common issues of law and fact. In its motion to dismiss the GLW Action, Motorola draws from many of the same legal arguments it advanced (most unsuccessfully) in the motion to dismiss the J-Squared Action. Again, in its motion for summary judgment in the J-Squared Action, Motorola interjects some of the same legal arguments (for the third time) that were already decided through the J-Squared motion to dismiss (following full briefing and, therefore, subject to law of the case estoppel).

9. Factually, Motorola asserts the same defenses, based on the same conduct by the same actors. Indeed, Motorola proffered the Declaration of its Business Development Manager Steven Machernis who readily admitted that he "worked with four manufacturer's representatives who had contracted with the Motorola Computer Group to sell its products in specific regions in the Eastern half of North America: Electronic Manufacturers' Agents; GL Williams Associates, Inc.; J-Squared Technologies, Inc.; and RT Technologies Inc." (Machernis Dec. at ¶ 2 (attached as Exhibit 1) (emphasis added)). Moreover, Paul Holt, Motorola's Director of North American Sales, testified at his deposition that "I would say all the manufacturer's reps have one common kind of concern that typically they have when a manufacturer goes to a manufacturer's rep model. Their concern that they typically bring up, and I don't recall if it was C&S exactly who brought it up or J-Squared or whoever, but it would be, you know, 'Are you guys going to continue with this? Is this something that is a strategy for you or are you going to go change your mind?'" (Holt dep. at 67-68 (attached as Exhibit 2)). Mr. Holt played role in negotiating four of the five agreements subject to these actions. Finally, Messrs. Holt and

4

Machernis were present at and spoke during the September 2003 "kick-off" meeting in Boston where Motorola reaffirmed its commitment to a long-term manufacturer's representative business model.

WHEREFORE, Plaintiffs respectfully request that their motion to consolidate be granted and that the above-captioned actions be consolidated for all purposes, including trial.

Dated: May 22, 2006

/s/ David A. Felice
Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
*Attorneys for Plaintiffs*

Of Counsel:
Kevin F. Berry
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2000
Facsimile: (215) 665-2013

# *Exhibit 1*

## DECLARATION OF STEVEN MACHERNIS

1. Since August 2003, I have been the Director, North American Sales – Eastern Region, for the Motorola Computer Group. From January 2002 through August 2003, I was a Business Development Manager for Motorola Computer Group's North America sales organization in the Boston area.

2. As part of my job responsibilities in these positions, I worked with four manufacturer's representatives who had contracted with the Motorola Computer Group to sell its products in specific regions in the Eastern half of North America: Electronic Manufacturers' Agents; GL Williams Associates, Inc.; J-Squared Technologies, Inc.; and RT Technologies Inc.

3. I was not involved in the negotiations leading to a Manufacturer's Representative Agreement with any manufacturer's representative.

4. In 2003 and 2004, I was involved in a review by the Motorola Computer Group of the performance of its manufacturer's representatives. It is my understanding that based on the performance review, the Motorola Computer Group discontinued use of manufacturer's representatives to sell its products because: (1) a majority of the manufacturer's representatives then selling products for the Motorola Computer Group were not meeting the performance standards set forth in their Manufacturer's Representative Agreements with the Motorola Computer Group, and (2) the overhead to continue use of just the few manufacturer's representatives who were meeting the performance standards would be too high to justify continued use of that sales channel.

5. Motorola's decision to discontinue use of the manufacturer's representatives was not motivated by any intent to misappropriate any goodwill created by any manufacturer's representative for the Motorola Computer Group.

6. I am not aware of any promises having been made by the Motorola Computer Group to any manufacturer's representative that term of their Manufacturer's Representative Agreement would be anything other than in accordance with the terms stated in the written agreement.

7. I am not aware of any misrepresentations having been made by the Motorola Computer Group to any manufacturer's representative.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 15, 2004.

*/s/ Steven Machernis*
Steven Machernis

# *Exhibit 2*

**VICTORY**
**VERBATIM REPORTING SERVICES**

RD/sp

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| J-SQUARED TECHNOLOGIES, INC., a Canadian corporation, and | |
| J-SQUARED TECHNOLOGIES (OREGON) INC., an Oregon corporation | C.A. No. 04-960-SLR |
| Plaintiffs | |
| v. | |
| MOTOROLA, INC., a Delaware corporation | JURY TRIAL DEMANDED |
| Defendant | |

This is the Deposition of WILLIAM PAUL HOLT, taken at the offices of VICTORY VERBATIM REPORTING SERVICES, Suite 900, Ernst & Young Tower, Toronto-Dominion Centre, Toronto, Ontario, on the 8th day of December, 2005.

---------------------------

**VICTORY**
**VERBATIM REPORTING SERVICES**

A P P E A R A N C E S:

DAVID A. FELICE, ESQ.                     ---    for the Plaintiffs
Cozen O'Connor
1201 North Market Street
Suite 1400
Wilmington, DE 19801

EMILY S. CATES, MS.                       ---    for the Defendant
Lewis and Roca
40 North Central Avenue
Phoenix, Arizona 85004-4429

W.P. Holt - 67

how a manufacturer rep would be paid? Is that what you are asking me?

181. Q. Yes.

A. I am sure we would have that discussion because...now I am going to speculate again, you know, with my knowledge that I had. At the time, them being the first one we signed, we were doing a lot of asking manufacturer's reps how their programs worked with manufacturers.

We were learning, you know, "How are you guys paid on other lines?" Typically, these guys have multiple lines.

So we would have discussed it, and probably very much been in a fact finding role early on to understand how...you know, how their agreements were structured, so that we would have a competitive, professional agreement.

182. Q. Was there any discussion as to the life cycle of this manufacturer representative program or model?

A. The life cycle. Well, I would say all the manufacturer's reps have one common kind of concern that typically they have when a manufacturer goes to a manufacturer's rep model.

Their concern that they typically bring up,

and I don't recall if it was C&S exactly who brought it up or J-Squared or whoever, but it would be, you know, "Are you guys going to continue with this? Is this something that is a strategy for you or are you going to go change your mind?" because they have seen that with other manufacturers before.

Certainly our strategy was to go and hire manufacturer's reps and help them be successful, and our hope was that that would continue. So that was the strategy at the time.

I guess it turned out that it didn't continue as long as, you know, I personally would have hoped at that time, you know, for whatever reason. I am not sure, but you know...

183.    Q.    Do you recall your specific response when these inquiries were raised?

A.    No, not a specific response.

184.    Q.    Here at the last sentence it talks about proceeding cautiously, and they have in the pipeline a candidate in western Canada.

A.    M'hm.

185.    Q.    Who was that?

A.    I am trying to remember if it was J-Squared. It says two in eastern Canada, one candidate in western Canada. You know, I am not

## CERTIFICATE OF SERVICE

I, David A. Felice, do hereby certify that on May 22, 2006, I electronically filed a notation of the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing to the following counsel of record:

>William W. Bowser
>Young Conaway Stargatt & Taylor
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, DE  19801
>
>Cory Talbot
>Lewis and Roca LLP
>40 N. Central Avenue
>Phoenix, AZ  85004

>*David A. Felice*
>David A. Felice (#4090)
>Cozen O'Connor
>1201 North Market Street, Suite 1400
>Wilmington, DE  19801
>Telephone: (302) 295-2000
>Facsimile: (302) 295-2013
>Email: dfelice@cozen.com