UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

G.L. WILLIAMS ASSOCIATES, INC.; RT )
TECHNOLOGY, LLC; and WEST COAST )
REPS, INC. )
    )    C.A. No. 06-114-SLR
    )
    Plaintiffs,  )
    )
    vs.    )
    )
MOTOROLA, INC.,    )
    )
    Defendant.  )
    )

**REPLY BRIEF OF DEFENDANT MOTOROLA, INC. IN SUPPORT OF
ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION
FOR MORE DEFINITE STATEMENT**

William W. Bowser
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6601 (Telephone)
wbowser@ycst.com

Of Counsel:
Randy Papetti
Cory A. Talbot
Emily S. Cates
LEWIS AND ROCA LLP
40 N. Central Avenue
Phoenix, Arizona  85004
(602) 262-5311
Attorneys for Defendant

DATED:  June 1, 2006.

1738055.3

## **TABLE OF CONTENTS**

I.    Introduction .................................................................................. 1

II.    Arizona Law Governs All Claims in This Case............................. 2

III.    Plaintiffs' Deceptive Trade Practices Claim Fails ....................... 4

IV.    Plaintiffs' Negligent Misrepresentation Claim Fails.................... 6

    A.    <u>Plaintiffs Do Not Allege A Misrepresentation of Fact Regarding Motorola's Intent to Use A Long-Term Business Model</u> ........................................................................ 7

    B.    <u>Plaintiffs' Unpled Misrepresentation of Revenue Claim Fails</u> .......... 8

    C.    <u>The Economic Loss Doctrine Bars Plaintiffs' Claim</u> ....................... 9

V.    Plaintiffs Cannot Recover Punitive Damages............................ 10

VI.    Plaintiffs' Deceptive Trade Practices, Fraud, and Negligent Misrepresentation Claims Fail to Comply With Rule 9(b) ....................... 12

VII.    Conclusion ............................................................................... 15

ERROR! UNKNOWN DOCUMENT PROPERTY NAME.

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165 (D.D.C. 2003) ............................................................................. 8-9

*Arnold & Associates, Inc. v. Misys Healthcare System*, 275 F. Supp. 2d 1013 (D. Ariz. 2003) ............................................................................7, 9 n.3

*Brown v. SAP America, Inc.*, 1999 WL 80388 (D. Del. Sept. 13, 1999).............. 13

*F.D.I.C. v. Bathgate*, 27 F.3d 850 (3d Cir. 1994).......................................... 13-14

*Falco v. Alpha Affiliates, Inc.*, 1999 WL 222464 (D. Del. March 25, 1999) .. 10-11

*Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678 (D. Md. 2001) ....................................................................................................... 5

*In re Student Finance  Corp.*, 2004 WL 609329 (D. Del. March 23, 2004)......... 13

*J&R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259 (3d Cir. 1994)......................................................................................... 5

*J-Squared Technologies, Inc., et al. v. Motorola, Inc.*, 364 F. Supp. 2d 449 (D. Del. 2005)...................................................................................... 2-4, 11

*Klein v. General Nutrition Co., Inc.*, 186 F.3d 338 (3d Cir. 1999) ..................... 13

*Liafail, Inc. v. Learning 2000, Inc.*, 2002 WL 31667861 (D. Del. Nov. 25, 2002)............................................................................................................... 14

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004)........................................ 12

*Murray v. Xerox Corp.*, 811 F.2d 118 (2d Cir. 1987)............................................ 8

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059 (C.D. Cal. 2003) ...................................................................... 5

*Oliver B. Cannon & Son, Inc. v. Fidelity and Casualty Co. of New York*, 484 F. Supp. 1375 (D. Del. 1980) ................................................................. 10

1738055.3

*In re Rockefeller Center Properties, Inc. Securities Litigation*, 311 F.3d 198 (3d Cir. 2002) .............................................................................. 14

*Seville Industrial Machine Corp. v. Southmost Machine Corp.*, 742 F.2d 786 (3d Cir. 1984)..................................................................... 12

*U.S. ex rel. Cox v. Iowa Health System*, 29 F. Supp. 2d 1022 (S.D. Iowa 1998) ...................................................................................... 13

## STATE CASES

*Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032 (Del. Ch. 2006) ....................................................................................... 2, 3

*Carstens v. City of Phoenix*, 75 P.3d 1081 (Ariz. App. 2003) ............................... 9

*Castiel v. VGS, Inc.*, 2003 WL 723285 (Del. Ch. March 10, 2003)....................... 3

*Continental National Bank v. Evans*, 489 P.2d 15 (Ariz. 1971) ........................... 10

*Dixon v. City of Phoenix*, 845 P.2d 1107 (Ariz. App. 1992)........................... 10-12

*Hadley v. Southwest Properties, Inc.*, 570 P.2d 190 (Ariz. 1977)................... 10, 11

*Lufty v. R.D. Roper & Sons Motor Co.*, 115 P.2d 161 (Ariz. 1941).................... 11

*McAlister v. Citibank*, 829 P.2d 1253 (Ariz. App. 1992) ...........................7, 9 n.3

*Rawlings v. Apadoca*, 726 P.2d 565 (Ariz. 1986) ..........................................11 n.4

*State ex rel. Brady v. Pettinaro Enterprises*, 870 A.2d 513 (Del. Ch. 2005).....6 n.1

*Tarmann v. State Farm Mutual Automobile Insurance Co.*, 2 Cal. Rptr. 2d 861 (Cal. App. 1991) ...................................................................... 8

*United Dairymen of Ariz. v. Schugg*, 128 P.3d 756 (Ariz. App. 2006) ............... 10

*Wagner v. Rao*, 885 P.2d 174 (Ariz. 1994) ....................................................... 11

*Wald v. Wilmington Trust Co.*, 552 A.2d 853 (Del. Super. 1988) ........................ 6

1738055.3

## STATE STATUTES

M.G.L.A. 93A § 11 ............................................................................. 6

## JOURNAL ARTICLES

*Edward P. Ballinger, Jr. & Samuel T. Thumma, The History, Evolution &*
   *Implications of Arizona's Economic Loss Rule,* 34 Ariz. St. L.J. 491, 502
(2002) ............................................................................................... 9

## RESTATEMENT

RESTATEMENT (SECOND) OF CONFLICTS OF LAW ............................................ 2-4

1738055.3

## I.    Introduction.

Plaintiffs' Answering Brief to Motorola's Motion to Dismiss is a curious combination of concessions and repeated failures to confront Motorola's arguments.  To begin, plaintiffs concede that their deceptive trade practices claim fails under governing Arizona law and that GLW cannot assert a breach of contract claim for Motorola's alleged failure to disclose a "moratorium" on signing up new sales representatives.  Accordingly, the Court should dismiss these claims.

Beyond that, plaintiffs ignore argument after argument raised in Motorola's Opening Brief:

- Plaintiffs ignore Motorola's choice of law analysis, which this Court has already adopted in other litigation involving former Motorola sales representatives, and instead set forth a choice of law analysis that has been rejected by controlling Delaware authority;

- Plaintiffs ignore Motorola's argument that their deceptive trade practices claim would fail under other states' laws (a point that this Court need not reach given the choice-of-law analysis);

- Plaintiffs ignore Motorola's rationale for applying the economic loss doctrine in this case, simply relying on this Court's prior motion to dismiss ruling in other litigation, which Motorola urged the Court to rethink in its Motion and Opening Brief;

- Plaintiffs ignore Motorola's Motion for More Definite Statement entirely, effectively conceding the improper vagueness of their Complaint; and

- Plaintiffs ignore Motorola's Rule 9(b) argument—*i.e.*, that plaintiffs improperly allege examples of fraud rather than the full basis for

their fraud-based claims—focusing instead on a handful of specific allegations in their Complaint that Motorola never questioned. Plaintiffs' failure to respond to Motorola's arguments is telling. And the Court should not allow plaintiffs to misdirect and mislead the Court from the shortfalls in their Complaint. Instead, Motorola urges the Court to adopt its undisputed reasoning and grant its Motion to Dismiss.

## II.    Arizona Law Governs All Claims in This Case.

The parties' contracts all contain Arizona choice-of-law provisions. [D.I. 1 Ex. A ¶ 9.7; Ex. C ¶ 9.7; Ex. E ¶ 9.7.] Plaintiffs, however, want to limit these clauses dramatically, arguing that, under Delaware law, their "contractual choice of law provision only applies to contract-based claims." [D.I. 12, at 11.] But Delaware case law flatly rejects this approach:

> The Buyer asserts the proposition that the contracting parties only meant for Delaware law to govern contract claims that might arise among the parties, but not claims in tort seeking rescission of the Stock Purchase Agreement on grounds that false contractual representations were made. <u>That division is not sensible.</u> As § 201 of the Restatement (Second) of Conflict of Laws states: "[t]he effect of misrepresentation, duress, undue influence and mistake upon a contract is determined by the law selected by application of the rules of §§ 187-188." In turn, § 187 allows the law of the state chosen by the parties to govern contractual rights and duties unless the chosen state lacks a substantial relationship to the parties or transaction or applying the law of the chosen state will offend a fundamental policy of a state with a material greater interest. <u>Section 201's reasoning is important.</u>

*Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1047 (Del. Ch. 2006).

Motorola raised this precise point in its Opening Brief, relying on this Court's prior choice-of-law analysis in *J-Squared Technologies, Inc. v. Motorola, Inc.*, 364 F. Supp. 2d 449 (D. Del. 2005). There, the Court correctly conducted the precise analysis called for by *Abry Partners*, applying section 188 of the RESTATEMENT (SECOND) OF CONFLICTS OF LAW (the "RESTATEMENT") and

2

1738055.3

determining that the parties' choice-of-law provision (identical to the provisions in plaintiffs' Agreements in this case) governed the entire action:  "<u>The court determines that it should apply Arizona law in order to protect the expectations of the parties, who elected to have Arizona law govern their contract, and to ensure uniform adjudication of plaintiffs' claims</u>."  *J-Squared* 364 F. Supp. 2d at 452 n.7 (emphasis added) (citing RESTATEMENT § 188 cmt. b).

Ignoring this entirely, plaintiffs simply point to section 145 of the RESTATEMENT, which sets out the general principles for determining choice-of-law issues for tort claims.  That section, however, has no application in this case. *E.g.*, *Abry Partners*, 891 A.2d at 1047 n.24 (declining to apply section 145 of the RESTATEMENT because, in light of the parties' contractual choice of law provision, that "more general" RESTATEMENT section "does not specifically address the current context").  Rather, where a tort claim turns on "[t]he effect of misrepresentation, duress, undue influence and mistake upon a contract," the choice of law issue "is determined by the law selected by application of the rules of §§ 187-188."  RESTATEMENT § 201; *see also Abry Partners*, 891 A.2d at 1047 & n.24 (applying RESTATEMENT § 201); *Castiel v. VGS, Inc.*, 2003 WL 723285, at *7 n.29 (Del. Ch. March 10, 2003) (same).

Here, plaintiffs' tort claims are based on just such allegations.  Plaintiffs assert that "Motorola represented, unequivocally, that it had a long-term strategy to maintain the manufacturer's representatives business model"; that "to the contrary, at no time did Motorola hold a belief or intention that its proposed manufacturer's representative business model was not, in fact, a long-term business relationship or solution"; and that such "**Deceptive Negotiations**" led plaintiffs to enter into the Manufacturer's Representative Agreements.  [D.I. 1 ¶¶ 17, 18, 26, 41, & 52 & p.3.]  Thus, because the purported misconduct involves misrepresentations regarding the Agreements themselves, the choice-of-law

3

analysis "is determined by the law selected by application of the rules of §§ 187-188." RESTATEMENT § 201.

As set out above, these are precisely the rules the Court applied in determining that Arizona law governed in the *J-Squared* case. 364 F. Supp. 2d at 452 n.7. And plaintiffs do not assert that the Court's analysis in *J-Squared* under these rules was incorrect. Nor could they. Because the parties already agreed that Arizona law governs this dispute, "[a]pplication of the chosen law will be refused only (1) to protect a fundamental policy of the state which . . . would be the state of the otherwise applicable law, provided (2) that this state has a materially greater interest than the state of the chosen law in the determination of the particular issue." RESTATEMENT § 187 cmt g. Plaintiffs identify no fundamental policy of any jurisdiction that would trump the application of Arizona law.

Furthermore, "[t]he more closely this state is related to the contract and to the parties, the more likely it is that the choice-of-law provision will be given effect." *Id*. As MCG is based in Arizona, virtually all of its alleged conduct in this case has a significant Arizona nexus. And given that nexus, Arizona law— which the parties chose—should govern.

### III.  Plaintiffs' Deceptive Trade Practices Claim Fails.

In its Opening Brief, Motorola explained that plaintiffs could not state a "deceptive trade practices" claim under governing Arizona law because they were not protected "buyers" under the Arizona Consumer Fraud Act. [D.I. 6, at 8-10.]. Plaintiffs concede this. [D.I. 12, at 15 n.5.] Accordingly, the Court should dismiss plaintiffs' deceptive trade practices claim.

Beyond that, however, Motorola also explained that, even if another state's consumer fraud act were applied, plaintiffs' deceptive trade practices claim would still fail for the same reason—they are not protected buyers. [D.I. 6, at 10 n.4.] Plaintiffs do not respond to this argument at all but instead simply string-cite

various state statutes (some of which—Massachusetts and Delaware—were never mentioned in their Complaint). That is not enough, and plaintiffs' claim would fail under each of these statutes:

- New Jersey: Plaintiffs cannot state a claim under New Jersey's Consumer Fraud Act because they are not ordinary consumers in the marketplace. *J&R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1271-73 (3d Cir. 1994) (finding that franchisee suing over the sale of a franchise was not an ordinary consumer in the marketplace and, accordingly, could not state a claim under New Jersey's Consumer Fraud Act). Motorola stated this in its Opening Brief, [D.I. 6, at 10 n.4], and plaintiffs presented no response.

- Maryland: Plaintiffs cannot state a claim under Maryland's Consumer Protection Act because they are commercial entities, not consumers. *Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 692 (D. Md. 2001) (holding that a violation of the Maryland Consumer Protection Act may only be alleged by a consumer and that a commercial entity did not qualify). Motorola stated this in its Opening Brief, [D.I. 6, at 10 n.4], and plaintiffs presented no response.

- California: Plaintiffs cannot state a claim under California's Unfair Competition Law because they are commercial entities, not the "general public," and they do not and cannot allege that the public was affected by the termination of their contracts. *National Rural Telecommunications Cooperative v. DIRECTV*, *Inc*., 319 F. Supp. 2d 1059, 1077-78 (C.D. Cal. 2003).

5

- <u>Delaware</u>:  Plaintiffs cannot state a claim under Delaware's Uniform Deceptive Trade Practices Act because they do not—and cannot—claim that Motorola's alleged deceptive practices are continuing and ongoing patterns of behavior.  *Wald v. Wilmington Trust Co.*, 552 A.2d 853, 855 (Del. Super. 1988).[1]

- <u>Massachusetts</u>:  Plaintiffs cannot state a claim under Massachusetts' trade practices law because the plain terms of Massachusetts' statute requires that the unfair practice occur "primarily and substantially" within Massachusetts.  M.G.L.A. 93A § 11.  But plaintiffs executed their Agreements, allegedly based on Motorola's misrepresentations, months and months <u>before</u> any alleged misconduct occurred in Massachusetts.  [D.I. 1 ¶¶ 26, 41, 52, & 72.]

In sum, plaintiffs' deceptive trade practices claim fails under governing Arizona law and under the other states' laws cited by plaintiffs (which do not apply at any rate).  Accordingly, that claim should be dismissed.[2]

IV.    **Plaintiffs' Negligent Misrepresentation Claim Fails.**

As Motorola explained in its Opening Brief, plaintiffs' negligent misrepresentation claim fails because (1) they have not alleged a misrepresentation of fact and (2) it is barred by Arizona's economic loss doctrine.

---

[1] As a result, Delaware law limits any claim to equitable relief, which plaintiffs do not seek for their deceptive trade practices claim.  *State ex rel. Brady v. Pettinaro Enterprises*, 870 A.2d 513 (Del. Ch. 2005).

[2] Plaintiffs' scattershot citation to statutory schemes not mentioned in their Complaint underscores the need for further clarity.  Indeed, plaintiffs did not respond <u>at all</u> to Motorola's motion for a more definite statement.  [D.I. 6, at 10 n.4.]  Accordingly, if it does not dismiss the deceptive trade practices claim, the Court should order plaintiffs to make a more definite statement of that claim.

1738055.3

**A.** **Plaintiffs Do Not Allege A Misrepresentation of Fact Regarding Motorola's Intent to Use A Long-Term Business Model.**

Plaintiffs say that "Motorola represented, unequivocally, that it had a long-term strategy to maintain the manufacturer's representatives business models," [D.I. 1 ¶ 17], but that Motorola "did not possess the present intent to perform its obligations when the representations were made," [D.I. 1 ¶ 82; *see also id.* ¶ 18]. Plaintiffs insist that these were factual representations (as opposed to representations involving future conduct) and that, even if these were "expressions of future intent," they can "still serve as a basis to establish a misrepresentation claim." [D.I. 12, at 17.] Plaintiffs are wrong.

These are not representations of fact: "A promise of future conduct is not a statement of fact capable of supporting a claim of negligent misrepresentation." *McAlister v. Citibank*, 829 P.2d 1253, 1261 (Ariz. App. 1992). Thus, statements that "involve promises concerning future events" cannot serve as the basis for a negligent misrepresentation claim. *Arnold & Associates, Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1029 (D. Ariz. 2003).

Furthermore, plaintiffs cannot avoid this conclusion by simply reframing representations regarding future conduct as allegations of Motorola's "present intent" not to perform. In trying to do so, plaintiffs blur, indeed ignore, the distinction between fraudulent and negligent misrepresentation, and courts have rejected such semantic games:

> Here, plaintiff alleges that defendant made negligent misrepresentations about its intent to follow federal law and to pay branch operating expenses. These allegations do not allege that defendant failed to take care in obtaining or communicating information, but rather allege that defendant made misrepresentations about its intent to perform in the future. <u>Although a cause of action for intentional misrepresentation of present intention may lie, a claim for negligent misrepresentation with the same premise cannot. Indeed, it is not possible to be negligent in failing to ascertain the truth or falsity of one's present intention to act in the future.</u>

1738055.3

*Mitchell v. Franklin Bank, S.S.B.*, 2005 WL 2406034, at *3 (D. Minn. Sept. 29, 2005); *see also, e.g.*, *Murray v. Xerox Corp.*, 811 F.2d 118, 123-24 (2d Cir. 1987) ("[Plaintiff's] efforts to frame broken promises into misrepresentations of present facts are fruitless. Clearly, [Plaintiff] complains of no more than breach of promises of future conduct regarding promotions and transfers. His complaints are not actionable under a negligent misrepresentation theory."); *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. Rptr. 2d 861, 863-64 (Cal. App. 1991) (concluding there is no negligent misrepresentation cause of action for a "negligent false promise").

Accordingly, plaintiffs' negligent misrepresentation claim should be dismissed.

### B.    Plaintiffs' Unpled Misrepresentation of Revenue Claim Fails.

In their Answering Brief, plaintiffs say that Motorola provided them with historical revenue figures but that "Motorola's portrayal of the revenue figures were false or made with the reckless disregard for the truth as the actual revenue (and commissions earned) were significantly less than those represented." [D.I. 12 at 17.]

Motorola did not address this backwards-reasoning assertion—*i.e.*, because revenue under the Agreements was lower than historical revenue, Motorola must have lied about the historical revenue—in its Opening Brief for good reason: It was not pled. Instead, every allegation of misrepresentation turns solely on Motorola's intent to establish a long-term business model involving the sales representatives. [D.I. 1 ¶¶ 15-19, 26, 40, 54, 72, & 82.] Plaintiffs' attempt to salvage their negligent misrepresentation claim through newfound claims in their Answering Brief is improper. *E.g.*, *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a

complaint may not be amended by the briefs in opposition to a motion to dismiss.").[3]

**C.    The Economic Loss Doctrine Bars Plaintiffs' Claim.**

In addition to the foregoing, plaintiffs' negligent misrepresentation claim is barred by Arizona's economic loss doctrine. In Arizona, the rule is that no economic damages flowing from alleged tortious conduct can be recovered "unless accompanied by physical harm." *Carstens v. City of Phoenix*, 75 P.3d 1081, 1083 (Ariz. App. 2003).

Plaintiffs allege no physical harm, but argue instead that this doctrine is limited to cases governed by the Uniform Commercial Code. Ironically, in doing so, plaintiffs admit that Arizona has applied the doctrine both in "the context of a sale of goods under the UCC and a construction liability action," [D.I. 12, at 18 (emphasis added)], which is plainly not governed by the UCC. Accordingly, we urge the Court to follow the Arizona case law and commentary—which plaintiffs ignore—recognizing that the economic loss doctrine is not limited to UCC cases. *See, e.g.*, *Carstens*, 75 P.3d at 1083-84 (Ariz. App. 2003) (applying the doctrine to bar non-UCC claims—the claims turned on the city's alleged failure to properly inspect real property for construction defects—and citing similar cases); Edward P. Ballinger, Jr. & Samuel T. Thumma, *The History, Evolution & Implications of Arizona's Economic Loss Rule*, 34 Ariz. St. L.J. 491, 502 (2002) ("Does Arizona's economic loss rule apply to common law contracts? Yes."). The economic loss doctrine precludes plaintiffs' negligent misrepresentation claim.

---

[3] Furthermore, to the extent plaintiffs are saying that the actual revenue and commissions were not what Motorola said they would be, such representations of future performance cannot be the basis of a negligent misrepresentation claim. *McAlister*, 829 P.2d at 1261 ("A promise of future conduct is not a statement of fact capable of supporting a claim of negligent misrepresentation."); *Arnold & Associates*, 275 F. Supp. 2d at 1029 (finding that statements that "involve promises concerning future events" cannot serve as the basis for a negligent misrepresentation claim).

1738055.3

## V.     Plaintiffs Cannot Recover Punitive Damages.

The parties expressly agreed in their contracts with MCG that they could not recover punitive damages.  In their Answering Brief, plaintiffs claim that this provision applies only to breach of contract claims and not to "extra-contractual claims."  [D.I. 12, at 19.]  This is contrary to the plain text of the contract:

> IN NO EVENT, WHETHER FOR <u>BREACH OF CONTRACT, WARRANTY, MOTOROLA'S NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE</u> WILL MOTOROLA BE LIABLE FOR INCIDENTAL, SPECIAL, <u>PUNITIVE</u> OR CONSEQUENTIAL DAMAGES . . . .

[D.I. 1 Ex. A ¶ 3.8; Ex. C ¶ 3.8; Ex. E ¶ 3.8 (emphasis added).]  Indeed, because punitive damages are not even available for breach of contract under Arizona law, there was no need for the parties to expressly agree that punitive damages would not be available for breach of contract.  *See Continental Nat'l Bank v. Evans*, 489 P.2d 15, 18 (Ariz. 1971) ("Punitive damages cannot be awarded for breach of contract"); *see also Oliver B. Cannon & Son, Inc. v. Fidelity and Cas. Co. of New York,* 484 F. Supp. 1375, 1287 (D. Del. 1980) ("It is the general rule in Delaware, as elsewhere, that exemplary damages usually cannot be obtained for breach of contract.").

Under Arizona law, "a contract provision governing remedies or damages is generally binding on the parties."  *Dixon v. City of Phoenix*, 845 P.2d 1107, 1112 (Ariz. App. 1992); *see also United Dairymen of Ariz. v. Schugg*, 128 P.3d 756, 761 (Ariz. App. 2006) ("Express contract provisions governing remedies or damages are generally binding on the parties."); *Hadley v. Southwest Props., Inc.*, 570 P.2d 190, 193 (Ariz. 1977) ("The parties to a contract may specify certain remedies which may be used in case of breach.  They may in addition make such a provision the exclusive remedy or remedies, barring all others which would otherwise be available.").  Delaware law is the same.  *Falco v. Alpha Affiliates*,

*Inc.*, 1999 WL 222464, at *8 (D. Del. March 25, 1999) (finding that parties to a contract are governed by provisions for the calculation of damages).

Plaintiffs do not disagree. Instead—ignoring this authority and ignoring entirely the fact that this Court upheld identical provisions in the *J-Squared* case— plaintiffs cite *Lufty v. R.D. Roper & Sons Motor Co.*, 115 P.2d 161, 166 (Ariz. 1941), and *Wagner v. Rao*, 885 P.2d 174, 177 (Ariz. App. 1994), for the proposition that the provision precluding punitive damages in their agreements improperly insulates MCG from committing fraud. Not true.

*Lufty* and *Wagner* held that a party cannot disclaim his right to bring a fraud claim, but did not ever address the parties' ability to contractually limit their remedies.[4] Cases such as *Hadley*, which <u>have</u> addressed such provisions, have upheld them. *See, e.g.*, *Hadley*, 570 P.2d at 193. Thus, there is no reason to depart from this Court's prior ruling regarding identical provisions in the *J-Squared* litigation—the Agreements' provisions excluding punitive damages, which do not preclude plaintiffs from pursuing fraud claims but simply limit the type of remedies that are available, should be upheld. 364 F. Supp. 2d at 454-55.

Plaintiffs also curiously state that *Dixon* (cited by Motorola in its Opening Brief for the general proposition that "a contract provision governing remedies or damages is generally binding on the parties") permitted a plaintiff to receive "extra-contractual . . . damages" and that, accordingly, Motorola's "own authority recognizes that a plaintiff is not held to a damages estimate at the time of contracting when it seeks redress for tortious conduct." [D.I. 12, at 20.] But, unlike this case, the remedies provision in *Dixon* did not limit the plaintiffs' ability to recover such damages. Accordingly, plaintiffs' suggestion here that *Dixon* allowed damages excluded by the parties' agreement is misleading. To the

---

[4] The same is true of plaintiffs' citation to *Rawlings v. Apadoca*, 726 P.2d 565 (Ariz. 1986): Like *Lufty* and *Wagner*, that case did not involve a limitation of remedies provision.

1738055.3

contrary, *Dixon*'s holding—that parties are bound by their agreed-upon remedies—is equally applicable here, and, therefore, plaintiffs should be held to their Agreements and not be allowed to recover punitive damages.

## VI.    Plaintiffs' Deceptive Trade Practices, Fraud, and Negligent Misrepresentation Claims Fail to Comply With Rule 9(b).

Plaintiffs argue that their Complaint provides "more than ample factual allegations to place Motorola on notice of the precise misconduct with which it is charged." [D.I. 12, at 20.] Hardly.

"In order to satisfy Rule 9(b), plaintiffs must plead with particularity 'the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are changed, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'" *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984))). The Complaint (1) "must allege who made a misrepresentation to whom and the general content of the misrepresentation," and (2) must also plead either "the 'date, place or time' of the fraud," or provide "'alternate means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Id*. at 224 (quoting *Seville*, 742 F.2d at 791).

In setting forth an unlikely conspiracy theory, plaintiffs' Complaint does rattle off some specific details: names, date ranges, and modes of communication. But, as stated in Motorola's Opening Brief—and ignored in plaintiffs' Answering Brief—these details are given only as <u>examples</u>, not as the full basis of plaintiffs' claims.

For instance, plaintiffs allege as follows regarding representations involving GLW:

Motorola made representations to WCR (<u>including</u> Walter Reynolds, Elmo Pinard and Joe Dohn) that Motorola was engaging

> manufacturer representatives across North America and that this business model was a long-term solution for Motorola. Frank Rafie, Jay Liston, Jim McGregor, Julie Blair, <u>and others</u> made these representations. The discussions with Motorola employees took place over the telephone and through in-person meetings in June, August, September and November of 2002 and January and February of 2003.

[D.I. 1 ¶ 22 (emphasis added).] Motorola did not quarrel with the identification of MCG and GLW personnel, which plaintiffs proudly emphasize in their Answering Brief. [D.I. 12, at 21.] Rather, Motorola objected to the "including" and "and others" catchall phrases, which lack the necessary Rule 9(b) details and do not allow Motorola adequately to prepare a defense. Such deficiencies recur throughout the Complaint. [*E.g.*, D.I. 1 ¶ 17 ("including"); ¶ 38 (recipient of representation not identified); ¶ 51 (recipient of representation not identified); ¶ 72 ("and others" and recipient of representation not identified); ¶ 89 ("including" and recipient of representation not identified).] Plaintiffs did <u>not</u> address these deficiencies at all.

And with good reason—such pleading is improper. At a bare minimum, Motorola is entitled to know the identities of <u>all</u> the speakers of the alleged representations and <u>all</u> the recipients of those representations—plaintiffs' examples are insufficient. *See, e.g.*, *U.S. ex rel. Cox v. Iowa Health Sys.*, 29 F. Supp. 2d 1022, 1025 (S.D. Iowa 1998) ("The Court acknowledges [plaintiff] includes "examples" of false claims in the complaint. . . . These examples do not satisfy Rule 9(b).").

Indeed, while plaintiffs rely on *Brown v. SAP America, Inc.*, 1999 WL 80388, at *14 (D. Del. Sept. 13, 1999), to say that the speaker need not be identified, subsequent cases have undermined *Brown* entirely, recognizing that the Third Circuit plainly requires the speaker to be identified. *In re Student Finance Corp.*, 2004 WL 609329, at *2 (D. Del. March 23, 2004) (citing *Klein v. Gen. Nutrition Co., Inc.*, 186 F. 3d 338, 345 (3d Cir. 1999), and *F.D.I.C. v. Bathgate*, 27

1738055.3

F.3d 850, 876 (3d Cir. 1994)); *see also In re Rockefeller Center Properties, Inc. Securities Litigation*, 311 F.3d 198, 217 (3d Cir. 2002) ("With regard to the showing of specificity, the Court has held that Rule 9(b) requires plaintiffs to identify the source of the allegedly fraudulent misrepresentation or omission."); *Liafail, Inc. v. Learning 2000, Inc.*, 2002 WL 31667861, at *4 (D. Del. Nov. 25, 2002) (finding that plaintiff failed to identify when, by whom, to whom, and under what circumstances, the alleged false statements were made).

Plaintiffs finally contend that because "Motorola is actively litigating the *J-Squared* action, which is based on substantially similar facts and conduct and involves almost identical Motorola actors" and because Motorola has settled claims from other manufacturer representatives, that Motorola is "disingenuous" in arguing that plaintiffs have failed to comply with Rule 9(b). [D.I. 12, at 22.] This is ridiculous. While the *J-Squared* and *GL Williams* plaintiffs have similar contracts and identical lawyers, their claims differ significantly and each dispute is unique. [*See* D.I. 10, at 7-10 (detailing distinctions among the *J-Squared* and *GL Williams* plaintiffs' claims).] In fact, plaintiffs even stress the differences in the claims in their Answering Brief: "As identified below, Motorola's argument lands wide of the mark given the difference in parties between this action and the *J-Squared* action and the lack of equivalence in the causes of action presented in Plaintiffs' Complaint." [D.I. 12, at 11-12.]

Furthermore, plaintiffs' assertion only underscores the need for additional particularity in their pleading—their attorneys have undertaken over ten months worth of discovery in the *J-Squared* litigation and, by their reasoning, should therefore be able to provide the full basis for the fraud claims here. In fact, given the weakness of the fraud allegations, if appropriate, Motorola intends to move quickly for summary judgment on these claims and is entitled to have a clear target in doing so.

1738055.3

As the foregoing makes clear, Motorola still does not know <u>who</u> made all the representations that plaintiffs complain of or <u>to whom</u> these representations were made. And we only have a vague sense of <u>when</u> and <u>how</u> they were made. Accordingly, plaintiffs have not adequately pled their consumer fraud, fraud, and negligent misrepresentation claims, and these claims should be dismissed.

**VII. Conclusion.**

For these reasons, and the reasons set out in Motorola's Motion and Opening Brief, the Court should hold plaintiffs to their Agreements and dismiss their claims for consumer fraud/deceptive trade practices, negligent misrepresentation, and punitive damages, as well as GLW's breach of contract claim based on Motorola's failure to disclose a "moratorium."

YOUNG CONAWAY STARGATT & TAYLOR, LLP

<u>/s/ William W. Bowser</u>
William W. Bowser (Bar I.D. 2239)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6601 (Telephone)
wbowser@ycst.com

Of Counsel:
LEWIS AND ROCA LLP
Randy Papetti
Cory A. Talbot
Emily S. Cates
40 N. Central Avenue
Phoenix, Arizona 85004
(602) 262-5311

Attorneys for Defendant

DATED: June 1, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| G.L. WILLIAMS ASSOCIATES, INC.; | ) | |
| RT TECHNOLOGY, LLC.; and WEST | ) | |
| COAST REPS, INC., | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 06-cv-00114-SLR |
| MOTOROLA, INC., a Delaware | ) | |
| corporation. | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I, William W. Bowser, Esquire, hereby certify that on this 1st day of June

2006, I caused to be served a true and correct copy of the foregoing **Reply Brief Of**

**Defendant Motorola, Inc. In Support Of Its Motion To Dismiss Or, In The**

**Alternative, Motion For A More Definitive Statement**, with the Clerk of the Court

using CM/ECF, which will send notification that such filing is available for viewing and

downloading to the following counsel of record:

> David Allan Felice
> Cozen O'Connor
> Chase Manhattan Centre, 1201 N. Market, Suite 1400
> Wilmington, DE 19801

I further certify that on this 1st day of June  2006, I caused to be mailed by

United States Postal Service a copy of the above-mentioned document to the following

non-registered participant:

> Kevin F. Berry
> Cozen O'Connor
> 1900 Market Street, Philadelphia, PA 19103

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ William W. Bowser
William W. Bowser, Esquire (Bar I.D. 2239)
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601; Facsimile: (302) 576-3282
Email: wbowser@ycst.com